Argued January 8, affirmed January 24, 1962

# UNITED STATES TOBACCO COMPANY *v.*
# STATE TAX COMMISSION

368 P. 2d 337

*James P. Forsyth, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Cabell, Medinger, Forsyth & Decker, Portland.

*Walter J. Apley,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief was Robert Y. Thornton, Attorney General, and Carlisle B. Roberts, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

## WARNER, J.

This is an appeal from a proceeding in the circuit court for Multnomah county, there brought pursuant to ORS 314.460 by the plaintiff, United States Tobacco Company, for a review of a determination of the State Tax Commission sustaining additional assessments under the Corporation Income Tax Law of this state. (See ORS 318.020[1] and 314.280.[2]) From a decree

---

[1] The Oregon Corporation Income Tax Law, ORS 318.020, provides:

"(1) There hereby is imposed upon every corporation for

affirming the order of the Commission, the Company appeals.

The sole issue presented by the appeal is: Did plaintiff's activities in Oregon constitute, within the meaning of the Due Process Clause of the Fourteenth Amendment, a sufficient nexus between Oregon and the New Jersey corporation to permit this state to include taxpayer's gross Oregon sales of its moist tobacco products in the numerator of the sales factor of the state's corporate income tax apportionment formula?

For the reasons which follow, we conclude that the

each taxable year a tax at the rate of eight percent upon its net income derived from sources within this state after August 3, 1955, other than income for any period for which the corporation is subject to the tax imposed by the Corporation Excise Tax Law of 1929 (ORS chapter 317) according to or measured by its net income. For tax years beginning on and after January 1, 1957, the tax rate shall be six percent.

"(2) Income from sources within this state includes income from tangible or intangible property located or having a situs in this state and income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate or foreign commerce."

⊚ ORS 314.280, which concerns the allocation of income of a corporation from business within and without the state, provides:

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

Company's activities with respect to the sale of all its tobacco products in Oregon constitute doing business therein as a unitary entity and that its gross sales of moist and dry tobacco products should be included in the allocation tax formula (Regulation 4.280(1)-(B)) and as authorized by ORS 314.280, supra.

The parties stipulated to stand upon the testimony presented at the hearing before the Commission and there is no basic dispute about the facts.

The Company is a New Jersey corporation with its principal office and place of business in New York City. It has never been licensed or qualified to do business in Oregon. It maintains three permanent, salaried representatives in Oregon: a district manager, and two sales representatives. It has no listing in or of its name in this state, nor does it maintain any warehouse or inventory of its products within its boundaries. The district manager operates from a desk in his house for which the Company compensates him $15 per month as rental. He stores his Company car in his personal garage for which the Company allows him $10 per month for the space. The two sales representatives also operate company-owned cars. Taxpayer has a minor amount of tangible property in Oregon such as typewriters, chairs and filing cabinets.

The Company classifies its tobacco products sold in Oregon into two categories: (1) moist tobaccos, including Copenhagen snuff and chewing tobacco, and (2) dry tobaccos, including cigarettes, cigars and pipe tobacco. Moist tobaccos are perishable in nature and have an acceptance life of approximately two weeks. The distribution of moist tobaccos is handled on a regular supply order (RSO) basis controlled at taxpayer's New York office. The Company's three Oregon representatives do not expressly solicit any orders

for moist tobacco. The quotas for moist tobaccos that Oregon dealers have are established through long experience and carefully checked for necessary adjustments in the New York office. Dry tobaccos have an acceptance life of approximately two years. Its representatives occasionally solicit orders and make car sales to retailers of the dry tobaccos.

The primary duty of the representatives, who devote their full time to the Company's operations, is to call on retail dealers throughout Oregon to advertise and promote the products, moist and dry tobaccos. This function includes educating the retailers to perpetuate sales of all of taxpayer's products, destroying old stock of Copenhagen snuff on retailers' shelves and reimbursing them therefor, assisting the retailers in advertising and merchandising displays, and preparing daily reports in regard to all the Company's tobacco products. To these ends they make 150 to 300 calls per week on retailers.

Regulation 4.280(1)-(B), supra, sets up a three-factor apportionment formula which takes into consideration a property, a wage and a sales factor. "In usual application, there is first found the percentage which the taxpayer's Oregon property bears to its total property. The same is done with respect to wages paid and sales made in Oregon. The three percentages obtained for Oregon are then totaled and divided by three. The result of this division is the percentage of the taxpayer's net income which is apportioned to this state." *A. C. Dutton Lbr. Corp. v. Ellis,* 228 Or 525, 365 P2d 867, 869 (October 25, 1961).

The Company filed Oregon corporation income tax returns for the years 1955 to 1958, inclusive. It included its gross sales of its dry tobacco products in Oregon (approximately $64,000 per year) in the nu-

merator of the sales factor of the apportionment formula of each return, and paid the tax indicated as due by such tax returns. However, taxpayer excluded the gross sales of its moist tobacco products in Oregon (approximately $533,000 per year) from the numerator of the apportionment formula and thus gave rise to the instant litigation.

■ Following an audit of plaintiff's tax returns, the gross sales in Oregon of its moist tobacco products were restored to the sales factor of the apportionment formula and notices of deficiency and proposed assessments were issued on August 12, 1959. The Company filed a formal protest of the deficiency assessments, a hearing was held thereon, and the assessments were sustained. Another hearing was held and the Commission again approved the additional taxes.

*Wisconsin v. J. C. Penney Co.,* 311 US 435, 85 L ed 267, 61 S Ct 246, 130 ALR 1229 (1940), states the fundamental test under the Due Process Clause at 85 L ed 270:

> "* * * A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.
> "* * * The simple but controlling question is whether the state has given anything for which it can ask return. * * *"

Accord, *Ott v. Mississippi Valley Barge Line Co.,* 336 US 169, 93 L ed 585, 589, 69 S Ct 432 (1949).

Within the ambit of this test fact patterns arise for determination. A most recent United States Supreme Court case directly in point is *Northwestern*

*States Portland Cement Co. v. Minnesota,* 358 US 450, 3 L ed2d 421, 79 S Ct 357, 67 ALR2d 1292 (1959), which was decided with a companion case, *Williams v. Stockham Valves & Fittings, Inc.* The facts in those two cases were as follows:

In *Northwestern,* appellant was an Iowa corporation engaged in the manufacture and sale of cement at its plant in Mason City, Iowa, some 40 miles from the Minnesota border. Its "activities in Minnesota consisted of a regular and systematic course of solicitation of orders for the sale of its products, each order being subject to acceptance, filling and delivery by it from its plant at Mason City." Forty-eight per cent of appellant's entire sales were made to customers in Minnesota. "For efficient handling of its activity in that State, appellant maintained in Minneapolis a leased sales office equipped with its own furniture and fixtures and under the supervision of an employee-salesman known as 'district manager.' Two salesmen, including this district manager, and a secretary occupied this three-room office. Two additional salesmen used it as a clearing house. Each employee was paid a straight salary by the appellant direct from Mason City and two cars were furnished by it for the salesmen. Appellant maintained no bank account in Minnesota, owned no real estate there, and warehoused no merchandise in the State. * * * Orders received by the salesmen or at the Minneapolis office were transmitted daily to appellant in Mason City, were approved there, and acknowledged directly to the purchaser with copies to the salesmen."

In addition to solicitation of approved and regular customers in the *Northwestern* case, appellant's salesmen also made contacts with potential new customers in Minnesota. Through this latter system "appellant's

salesmen would in effect secure orders for local deal-
ers which in turn were filled by appellant in the
usual manner. Salesmen would also receive and trans-
mit claims against appellant for loss or damage in
any shipments made by it, informing the company
of the nature thereof and requesting instructions
concerning the same." (358 US at 454-455, 3 L ed2d
at 424-425)

In *Stockham,* the respondent was "a Delaware Cor-
poration with its principal office and plant in Birming-
ham, Alabama. It manufactures and sells valves and
pipe fittings through established local wholesalers and
jobbers who handle products other than respondent's.
These dealers were encouraged by respondent to carry
a local inventory of its products by granting to those
who did so a special price concession. However, the
corporation maintained no warehouse or storage fa-
cilities in Georgia. It did maintain a sales-service
office in Atlanta, which served five States. This office
was headquarters for one salesman who devoted
about one-third of his time to solicitation of orders in
Georgia. He was paid on a salary-plus-commission
basis while a full-time woman secretary employed
there received a regular salary only. She was 'a source
of information' for respondent's products, performed
stenographic and clerical services and 'facilitated com-
munications between the  *  *  *  home office in
Birmingham,  *  *  *  [the] sales representative
*  *  *  and customers.  *  *  *  Respondent's sales-
man carried on the usual sales activities, including reg-
ular solicitation, receipt and forwarding of orders to
the Birmingham office and the promotion of business
and good will for respondent. Orders were taken by
him, as well as the sales-service office, subject to
approval of the home office and were shipped from

Birmingham direct to the customer on an 'f.o.b. warehouse' basis. Other than office equipment, supplies, advertising literature and the like, respondent had no property in Georgia, deposited no funds there and stored no merchandise in the State." (358 US at 455-456, 3 L ed2d at 425-426)

The court sustained the state income taxes and stated "that net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same." (358 US 452, 3 L ed2d at 424) The court summarily disposed of the due process argument at page 431 (3 L ed2d): "The taxes imposed are levied only on that portion of the taxpayer's net income which arises from its activities within the taxing State. These activities form a sufficient 'nexus between such a tax and transactions within a state for which the tax is an exaction.' "

A case involving the precise issue of state corporate income taxation of foreign corporations engaged in interstate commerce is *West Pub. Co. v. McColgan,* 328 US 823, 90 L ed 1603, 66 S Ct 1378, affirming per curiam 27 Cal2d 705, 166 P2d 861 (1946), and heavily relied upon by the United States Supreme Court in its recent *Northwestern-Stockham* decision, supra.

Two 1958 Louisiana Supreme Court cases, *Brown-Forman Distillers Corp. v. Collector of Revenue,* 234 La 651, 101 S2d 70 (1958), cert den 359 US 28, 3 L ed2d 625, 79 S Ct 602 (1959), and *International Shoe Co. v. Fontenot,* 236 La 279, 107 S2d 640 (1958), cert den 359 US 984, 3 L ed2d 933, 79 S Ct 943 (1959), have factual patterns similar to the instant case. In

both cases the application of the Louisiana net income tax to a foreign corporation was sustained.

On the basis of the case law it appears that due process is satisfied in the instant case in that there is a sufficient nexus between Oregon and the United States Tobacco Company for the former to include the latter's Oregon sales of its moist tobacco products in the numerator of the Oregon allocation formula.[9]

■ Another reason for requiring the Company to include its sales of moist tobacco products in the numerator of the allocation formula is that it is engaged in a unitary business. Its attempt to obtain different tax treatment for its dry and moist products because of its different internal administrative handling of the two products is without merit. A unitary business for present purposes is a term ascribed to an enterprise that manufactures, distributes and sells its products, the profits accruing only with the sales.[4]

■ The plaintiff here has unity of ownership and management, *Butler Bros. v. McColgan,* 315 US 501, 86 L ed 991, 994-995, 62 S Ct 701 (1942), unity of promotional and informational efforts by the Company's Oregon representatives in regard to both the moist and dry tobacco products, and uses the same personnel to call on retail outlets to merchandise both its products. The profits accrue to the Company only upon

---

[9] See, also, ET & WNC Transp. Co. v. Currie, 359 US 28, 3 L ed2d 625, 79 S Ct 602 (1959), affirming per curiam, 248 NC 560, 104 SE2d 403 (1958). Compare Scripto, Inc. v. Carson, 362 US 207, 211, 4 L ed2d 660, 80 S Ct 619 (1960), and General Trading Co. v. State Tax Comm., 322 US 335, 88 L ed 1309, 64 S Ct 1028 (1944), with Miller Bros. Co. v. Maryland, 347 US 340, 98 L ed 744, 74 S Ct 535 (1954).

[4] Underwood Typewriter Co. v. Chamberlain, 254 US 113, 65 L ed 165, 169, 41 S Ct 45 (1920); Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm., 266 US 271, 69 L ed 282, 287, 45 S Ct 82 (1924).

the sale of its finished products. Therefore, we hold that the component parts of the United States Tobacco Company's business "are too closely connected and necessary to each other to justify division or separate consideration as independent units." *John I. Haas, Inc. v. Ellis,* 227 Or 170, 361 P2d 820, 822 (1961).

The circuit court is affirmed.