# HAMILTON MANAGEMENT CORPORATION
## *v.* STATE TAX COMMISSION

Ralph H. Schlegel and Clarke C. Brown, Brown, Schlegel, Bennett & Milbank, Salem, Oregon, and Fred E. Neef and Glen Clark, Neef, Swanson and Myer, Denver, Colorado, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for plaintiff rendered January 5, 1968.

EDWARD H. HOWELL, Judge.

This is a suit to require the defendant commission to refund corporate excise taxes for the fiscal years 1962, 1963 and 1964.

The plaintiff, Hamilton Management Corporation, is incorporated under the laws of Delaware, with its principal office in Denver, Colorado, and is qualified to do business in Oregon. In the various states, including Oregon, plaintiff acts in a dual capacity as (1) the investment advisor and (2) as the sales agency for the shares of Hamilton Funds, Inc. Hamilton Funds, Inc. is an incorporated mutual fund with its cash, securities and other assets deposited in the First National Bank of Denver, as custodian. As the shares of Hamilton Funds, Inc. are sold in the various states the payments are received by the bank as custodian and invested primarily in various common stocks which emphasize long-term growth. The board of directors of Hamilton Funds, Inc. consists of seven persons, all

residents of Denver, the location of the company's principal office.

In addition to rendering the investment advisory service and maintaining the sales organization for the sale of shares in Hamilton Funds, Inc., the plaintiff is also in charge of sales of periodic investment certificates of Hamilton Fund. The latter is an investment trust arising through an agreement between Hamilton Management and the First National Bank of Denver. The purpose of the trust is to provide a means whereby shares in Hamilton Funds, Inc. may be purchased on the installment basis by making monthly payments. The buyer is issued a periodic investment certificate.

The plaintiff has conceded that its income received from the sale in Oregon of the Hamilton Fund, Inc. shares and Hamilton Fund periodic investment certificates is properly apportioned to Oregon and taxable by the defendant commission. The sole issue is whether the plaintiff's income from the advisory service rendered by it to Hamilton Funds, Inc. should also be apportioned to Oregon. The plaintiff contends that its sales division and its investment advisory division are two separate, independent and distinct entities and that income from the investment advisory service should not be apportioned to Oregon.

The facts are all important.

Hamilton Management, the plaintiff, and Hamilton Funds, Inc. entered into a written sales and distribution agreement for the sale of shares of the mutual fund and another agreement regarding the investment advisory services to be rendered to Hamilton Funds, Inc. Under the sales agreement which makes plaintiff

the exclusive distributor of the shares of Hamilton Funds, Inc., the shares are sold at net asset value plus a sales charge ranging from 8.5 percent down to one-half of one percent depending on the amount of shares purchased. The purchaser sends his check to the First National Bank of Denver, as custodian. The bank deducts the sales charge, pays it to Hamilton Management, the plaintiff, and the balance is invested in shares of Hamilton Funds, Inc., with the purchaser receiving stock certificates. According to the testimony the purchaser, instead of having an interest in the securities and assets owned by Hamilton Funds, Inc. has a share of stock in the latter, redeemable at his request. A shareholder in Hamilton Funds, Inc. has no interest in Hamilton Management. All of the assets of Hamilton Funds, Inc.—stocks, security, cash—are kept in the First National Bank of Denver under the custody agreement. Plaintiff's income from the sales and distribution agreement accrues from the sales charges mentioned.

The investment advisory agreement between plaintiff and Hamilton Funds, Inc. provided that the plaintiff would render investment advice to the board of directors of Hamilton Funds, Inc. The board appointed an investment advisory committee of five members to work with the research department and the portfolio manager of Hamilton Management. Recommendations to buy or sell are made to the committee and the committee reports this information to the board of directors of Hamilton Funds, Inc., which is free to accept or reject the advice. According to the testimony the orders for purchases or sales are "done by the traders in the investment research division of Hamilton Management Corporation" but could be done by the board of directors of Hamilton Funds,

Inc. The investment advisory contract provides for a sixty-day notice of termination by either party. The board of directors of Hamilton Funds, Inc. was free to, and did, receive some investment advice from brokerage houses with whom they bought and sold. All the investment advisory services occurred in Denver. Hamilton Management's income from the investment advisory service is computed by applying a certain percentage to the market value of the net assets of Hamilton Funds, Inc.; this amount is computed on a daily basis and paid quarterly to plaintiff. The amount of income from the advisory service consequently is affected by the market value and size of the portfolio of Hamilton Funds, Inc.

Of the seven members of the board of directors of Hamilton Funds, Inc., two are also on the board of Hamilton Management, the plaintiff. The others have no interest or employment relationship with plaintiff. All of plaintiff's officers are residents of Denver. Plaintiff's sales and advisory divisions are in the same building in Denver, but located on separate floors. The personnel and the activities of the sales division are entirely unrelated to the activities and personnel of the advisory division. Both divisions, however, make use of the same legal, accounting and supply departments.

As the plaintiff has conceded that the income from the sale of the mutual fund shares and periodic investment certificates in Oregon is properly allocated to Oregon and taxable by the defendant commission, there is no issue of nexus or the minimum connection necessary for Oregon to constitutionally tax Hamilton Management on its sales activity.

The crucial issue is whether plaintiff's investment advisory service is so related or connected to its sales

activities that plaintiff is considered a unitary corporation which would require the income from the advisory service to be apportioned to Oregon also. If plaintiff's business is not unitary then Oregon does not have sufficient contact or nexus with the income from the advisory service in Colorado to allow Oregon to constitutionally tax the income as such taxation would be a violation of the due process clause of the Fourteenth Amendment.

■ During the years involved, 1962 to 1964, ORS 314.280 provided that if the gross income of a corporation was derived from business done within and without the state the tax commission had the power to require either the segregated or apportionment method of reporting income and adopt such rules and regulations as would fairly reflect the net income of business done within the state.

■ The commission's Reg 4.280(1)–(B) under this statute stated:

"If the business of the taxpayer is carried on both within and without this state, and the income properly attributable to Oregon may be fairly reflected only by treating the business within and without the state as a unitary business, the apportionment method must be used. *The term 'unitary business' means that the taxpayer to which it is applied is carrying on a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units.* Where Oregon activities are part of a unitary business carried on within and without the state, the portion of the unitary income subject to tax in Oregon will be determined by the apportionment method. Where the activities carried on within the state are separate from the activities carried on outside of the state, the income subject to tax may be determined upon

a separate accounting of the Oregon activities. *Basically, if the operation of a business within Oregon is dependent on or contributes to the operation of the business outside the state, the entire operation is unitary in character, and the income from Oregon activities will be determined by the apportionment method.* In all cases where the business is unitary, some type of an apportionment formula will generally be employed, not separate accounting. \* \* \*" (Emphasis supplied.)

The regulation sets forth two tests to aid in determining if a business is unitary: (1) if the important parts of the business are too closely connected and necessary to each other to justify division or separate consideration, and (2) if the business done in Oregon is dependent on or contributes to the business done outside Oregon.

The Supreme Court of Oregon in several cases has had occasion to decide if a corporation doing business in Oregon is unitary in character.[1]

In *Zale-Salem, Inc. v. Tax Com.*, 237 Or 261, 391 P2d 601 (1964), the court found that a Texas corporation operating jewelry stores through wholly-owned corporate subsidiaries in various states, including Oregon, was a unitary corporation. There the offices of the corporation in Oregon were the same as the parent company; the parent company provided the buying, manufacturing, management, accounting, advertising and legal services for the subsidiary corporation. It also hired and trained personnel who were required

---

[1] For cases involving the same question in other jurisdictions see: *Webb Resources, Inc. v. McCoy*, 194 Kan 758, 401 P2d 879 (1965); *Great Lakes Pipe Line Co. v. Comm'r. of Taxation*, 272 Minn 403, 138 NW2d 612 (1965); *Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn 351, 131 NW2d 632 (1964); *Crawford Mfg. Co. v. State Commission of Rev. & Tax.*, 180 Kan 352, 304 P2d 504 (1956).

to submit daily accountings to the parent company. The court found that the subsidiary corporation in Oregon was dependent upon and contributed to the operation of the parent company and was unitary.

In *John I. Haas, Inc. v. Tax Com.*, 227 Or 170, 361 P2d 820 (1961), the plaintiff was a Delaware corporation with its principal place of business in Washington, D. C. Haas owned farmlands and raised hops in Oregon but also purchased hops in Oregon for sale elsewhere. It contended that its hop purchasing activity in Oregon was a separate and distinct business from its hop raising activity here and that income from the former should not be apportioned to Oregon. The court found that the purchasing and raising of hops were interrelated and benefitted each other and that Haas' Oregon activities were part of a unitary business.

The court reached the same conclusion in *U. S. Tobacco Co. v. Tax Com.*, 229 Or 627, 368 P2d 337 (1962). Plaintiff, a New Jersey corporation, employed salesmen who sold moist and dry tobacco to stores in Oregon. Plaintiff apportioned sales of the dry tobacco to Oregon but contended that it should not be required to include sales of the moist tobacco. The court found that plaintiff's business of selling moist and dry tobacco was unitary even though the company had different internal administrative handling of the two products. For purposes of the decision the court described a unitary business as an "enterprise that manufactures, distributes and sells its products, the profits accruing only with the sales." In finding the business unitary the court emphasized the unity of ownership and management, unity of promotional and informational efforts by the Oregon salesmen and

use of the same personnel in Oregon to promote both of plaintiff's products.

In *Hines Lumber Co. v. Galloway,* 175 Or 524, 154 P2d 539 (1944), the plaintiff owned timberlands and operated sawmills in Oregon and elsewhere. It also owned the majority of stock in an operating coal company located outside of Oregon. The plaintiff contended that its business was unitary and that it was entitled to offset a loss sustained from the stock in the coal company against the Oregon profits. The court found that plaintiff's lumbering and sawmill activities in Oregon and the ownership of the coal company were not unitary in nature and disallowed the loss from the coal company.

The facts in the instant case present a much closer question of whether the plaintiff is unitary than was presented in *Zale-Salem, Haas, U. S. Tobacco* and *Hines.*

 Under the defendant's regulation, *supra,* the first test to be applied to the facts is whether plaintiff's investment advisory service is too closely connected with the selling of the mutual fund shares to justify consideration of the two divisions as independent units. Plaintiff here is not similar to a corporation such as U. S. Tobacco which manufactures, distributes and sells its manufactured product for profit. Generally such manufacturing corporations are unitary corporations. *Butler Bros. v. McColgan,* 315 U S 501, 62 S Ct 701, 86 L Ed 991 (1942). In *U. S. Tobacco* the court found plaintiff's business of selling moist and dry tobacco to be unitary because of unity of ownership, management, promotional and sales activity by the same personnel. Other cases like *Zale-Salem* and *Edison California Stores v. McColgan,* 30

Cal2d 472, 183 P2d 16 (1947), have added unity of financing, control and supervision, accounting, advertising, legal and other services to the test. Here the plaintiff has unity of ownership, but not management. There is some unity of services because both the sales division and the investment advisory division have the same legal, accounting and supply departments. However, the employees of the sales division do not render any services in connection with the investment advisory division. The investment advisory division and the sales division are separate and independent of each other and under the defendant's regulation may be considered as independent units.

■ The other test mentioned in the defendant's regulation is whether the plaintiff's sales activity in Oregon is dependent on or contributes to the operation of plaintiff's investment advisory service in Colorado. It would not appear that plaintiff's activity in selling shares of the mutual fund in Oregon is dependent on the investment advice given in Colorado. While the investment advice was generally accepted by Hamilton Fund, Inc., the latter was free to and did receive some investment advice from other sources. Presumably, if the investment advice given by plaintiff was consistently erroneous it would affect the value of the shares which possibly would lessen a buyer's interest in the fund but this is considered to be too remote.

■ Apparently the main reason the defendant commission contends that plaintiff's business is unitary is based upon the theory that as plaintiff sells shares in the mutual fund in Oregon the fund increases causing the investment fee to increase. As previously mentioned, plaintiff's advisory fee is based on a percentage of the daily market value of the net assets

of Hamilton Funds, Inc. It is not based on the net asset value of Oregon's contribution to the fund, but on the total fund. In order for the defendant commission to tax the income from the advisory service and satisfy the due process clause of the Fourteenth Amendment there must be a connection between the Oregon sales and the plaintiff's advisory income arising from Oregon sales. The defendant cannot relate the Oregon sales to advisory income from other states. It is true that an Oregon sale, without any redemptions or fluctuations in the stock market, would increase the net asset value of the fund. However, the plaintiff's advisory fee is not hinged on the net Oregon sales. On the contrary the daily net asset value of the portfolio is affected by many important variables which will directly affect the value—income received from new sales, redemptions by shareholders in Oregon and other states, and probably most importantly, fluctuations in the stock market. It is entirely possible that Oregon's sales contribution to the portfolio would be more than offset by a drop in the stock market or by the redemption of shares, in which event the Oregon sales would have no effect at all on plaintiff's advisory fee. For these reasons it is this court's conclusion that plaintiff's investment advisory division is not so closely connected with its sales activity in Oregon as to constitute plaintiff a unitary corporation. Consequently the income from the advisory fee cannot be constitutionally apportioned to Oregon.

The order of the commission is set aside with costs to neither party.