[Civ. No. 30432. Second Dist., Div. Four. Mar. 18, 1968.]

W. E. HALL COMPANY, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

180

Thomas C. Lynch, Attorney General, Dan Kaufmann and Ernest P. Goodman, Assistant Attorneys General, Neal J. Gobar and Loren Miller, Jr., Deputy Attorneys General, for Defendant and Appellant.

Witter & Harpole and Myron E. Harpole for Plaintiff and Respondent.

FILES, P. J.—This action pursuant to Revenue and Taxation Code section 26102 was brought by plaintiff in the superior court for a refund of California franchise taxes allegedly overpaid for the income year of 1953. Judgment was rendered for plaintiff and defendant has appealed from that judgment.

The case was tried by the court without a jury on a written stipulation of facts and the testimony of one witness for the plaintiff. There is no conflict which can be regarded as factual. The issue is the application of the law to a transaction, the terms of which are clearly described.

In 1953 Pacific Steel Fiber Drums, a corporation (hereinafter called Pacific), was the wholly owned subsidiary of plaintiff, a California corporation (hereinafter called Hall). The two companies were managed by the same officers and the same boards of directors.

In April of 1953 Rheem Manufacturing Company (hereinafter called Rheem) expressed a desire to purchase the business of Pacific.

In the oral negotiations which followed, it was agreed that Rheem would pay $200,000 for the operating assets and the patents, and that it would pay book value for inventories on hand at the time of the transfer. Pacific would retain only its cash, accounts receivable, office equipment and passenger automobiles. Later Rheem, knowing that Pacific was to be

liquidated, requested that Hall, not Pacific, sell the assets to it because Rheem desired a financially responsible going concern to stand behind the seller's express and implied warranties in the transaction. This was agreeable to Hall.

On May 14, 1953, Pacific's board of directors adopted a resolution for the winding up of its business on June 30, 1953.

Under date of June 15, 1953, Hall and Rheem executed a written agreement describing the terms of the sale and setting a closing date of June 30, 1953.

On June 29, 1953, the boards of directors of Hall and Pacific adopted resolutions for the sale of the operating assets and patents from Pacific to Hall for a price of $200,000. On the same day the officers of Pacific executed a bill of sale of these assets to Hall, and the following day the officers of Hall executed a similar bill of sale to Rheem.

The journal and general ledger of Pacific recorded the sale of these assets to Hall on June 30, and the books of Hall recorded a sale to Rheem on July 1, 1953.

Pacific retained possession of its assets and continued its operation until the close of business on June 30. The next morning Rheem took over the assets, inventories, payroll and employees, and went ahead with the operation of the business.

On June 30 Hall drew a $100,000 check on one of its bank accounts (which actually had a balance in excess of that amount) payable to Pacific. Pacific set up on its books, on June 30, an account receivable from Hall in the amount of $100,000, reflecting the unpaid balance of the $200,000 sale price.

Rheem gave a check for $100,000 to Hall upon the closing date.

Between June 30 and July 16, 1953, all of Pacific's assets not required to satisfy its liabilities were transferred to Hall, completing the liquidation of Pacific. The $100,000 check drawn by Hall on June 30 was not deposited by Pacific, but was endorsed back to Hall in the course of the liquidation. Later the second $100,000 was paid by Rheem to Hall, and by Hall to Pacific, and then taken back by Hall in the liquidation. Pacific was dissolved on September 4, 1953.

There are three ways of viewing this transaction, as reflected in Hall's contentions, the Franchise Tax Board's contentions and the findings of the trial court.

: Hall says Pacific sold its assets to Hall, for $200,000, who resold the same assets at the same price to Rheem. Viewing the transaction this way is beneficial to Hall both on its

federal and state tax computations. The difference between Pacific's basis for the assets and the sale price resulted in a gain of $156,865.43 by Pacific. On the federal return Pacific had a capital loss carry forward which would partially offset this gain. For state tax purposes Pacific owed no tax measured by its 1953 income because this was its final year. The distribution of Pacific's assets to Hall resulted in neither gain nor loss because it was a complete liquidation of a subsidiary corporation. (Rev. & Tax. Code, § 25031f, since revised and renumbered § 24502.)[1] The sale of assets from Hall to Rheem resulted in neither gain nor loss because Hall purchased and sold at the same price.

The Franchise Tax Board (hereinafter called the Board) contends that the transfer of the operating assets and patents from Pacific to Hall was in substance a distribution in complete liquidation of a subsidiary corporation, resulting in cancellation of the subsidiary's stock. Upon that theory the transfer of the assets from Pacific to Hall resulted in no recognizable gain, but Hall's basis was its subsidiary's basis. (Rev. & Tax. Code, § 25071*l*, since revised and renumbered as § 24504, subd. (b).)[2] Upon this hypothesis, when Hall sold to Rheem, Hall realized a taxable gain measured by the difference between Pacific's basis and the $200,000 price.

It was upon that theory that the Board did on July 11, 1962, demand that Hall pay an additional tax for the year 1953, plus interest. Hall made the payment demanded by the Board, and then filed a claim for refund. When the Board disallowed the refund, this action followed.

The trial court made findings of fact and conclusions of law in which it concluded that the sale by Pacific was not a distribution in liquidation, but was a sale from Pacific to Rheem, in which Hall acted only as a conduit, as a method of guaranteeing title to the assets as requested by Rheem. Upon the theory that the sale was in substance one between

---

[1]Former section 25031f provided in pertinent part: "No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this section shall be considered to be in complete liquidation only if: . . . (3) The distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the income year; . . ."

[2]Section 25071*l* provided in pertinent part: "If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of Sections 25031f or 25031f-1, then the basis shall be the same as it would be in the hands of the transferor."

Pacific and Rheem, the gain was realized by Pacific and not by Hall. Thus Hall had no taxable gain from the sale and was entitled to a refund of the tax which the Board had exacted.

 Inasmuch as the terms of the transaction are not in dispute, the case presents only a question of how the taxing statutes apply to these facts. This is a question of law which the reviewing court must decide for itself. (*Pacific Pipeline Constr. Co.* v. *State Board of Equalization,* 49 Cal.2d 729, 736 [321 P.2d 729].)

No reported case has interpreted the statutes as applied to this fact situation. Furthermore, although the United States Internal Revenue Code contains sections comparable to those which are applicable here, the parties have not found any federal case which decides the issue. This court is therefore required to make its own analysis of the transaction and the applicable tax law.

 In interpreting the transaction the taxing authority is not necessarily bound by the language the taxpayer chose to describe it or by the bookkeeping entries chosen to record it.

In *Commissioner of Int. Rev.* v. *Court Holding Co.,* 324 U.S. 331 [89 L.Ed. 981, 65 S.Ct. 70], where the issue was whether a sale of assets, which was substantially contemporaneous with a corporate liquidation, should be regarded as a sale by the corporation or a sale by the shareholders, the court said (at p. 334 [89 L.Ed. at p. 985]) : ''The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. [Fn. omitted.] To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.''

The sale of assets to Rheem and the liquidation of Pacific were, from a business point of view, one plan and one arrangement. Neither the sale nor the liquidation would have been undertaken independently of the other. The two were linked for reasons quite apart from taxes. In substance, Rheem gave

184

up cash and received assets, Hall gave up stock and received cash, and Pacific gave up assets and redeemed its capital stock.

Although the liquidation and sale were in reality an integrated transaction, the tax laws deal with parts of it separately. A liquidation has one tax consequence, a sale has another. If Pacific had sold its assets in a transaction preceding the liquidation and unrelated to it, the gain would be attributed to Pacific. But if the liquidation had occurred first, and Hall had thereafter sold in a wholly distinct and unrelated transaction, the gain would be taxable to Hall. The problem arises here because the taxpayer chose to combine the events which the law treats separately. It is against this background that the Board and the court must look for the "substance" of this transaction.

■ One of the features of the sale to Rheem was that Hall would be the seller, so as to be liable upon the seller's warranties. Since Hall agreed to this for a business reason which it deemed sufficient, Hall is in no position to contend that this was a mere matter of form.

The decision in the *Court Holding* case, *supra*, does not support plaintiff's argument that "in substance, the transaction was a sale from Pacific to Rheem." In *Court Holding* the corporation first negotiated a sale of all of its assets and then, upon being advised that the sale by it would result in a large tax, it liquidated and turned over its assets to its shareholders in redemption of their stock. The shareholders thereafter, as individuals, sold the assets to the purchaser. The Supreme Court affirmed a decision of the Tax Court upholding a tax on the corporation upon the finding that "the executed sale was in substance the sale of the corporation."

*Court Holding* cannot be read as a decision that transactions such as this must be treated as sales by the liquidating corporation, despite the form chosen by the taxpayer. ■ The taxpayer does not have the same freedom to disregard the form he has chosen, as does the government. (*Moline Properties* v. *Commissioner of Int. Rev.*, 319 U.S. 436 [87 L.Ed. 1499, 63 S.Ct. 1132].) In the case at bench Hall chose to accept the benefits and burdens of becoming the seller to Rheem, and it is in no position to insist that the Franchise Tax Board disregard that fact.

The remaining question is whether the transfer from Pacific to Hall must be regarded as a sale, or as a liquidation, in exchange for stock.

It has already been noted that the sale of Pacific's assets and the liquidation of Pacific were parts of a single plan. But not all elements of the plan appeared simultaneously. Pacific's directors and stockholder formally declared their intention to dissolve Pacific on May 14, which was prior to the execution of any formal agreement with Rheem. The decision to pass the assets via Hall was made after Rheem learned of the impending dissolution, and because of it. The transfer of assets from Pacific to Hall was pursuant to a plan which included, as one of its elements, the immediate dissolution of Pacific; and the adoption of this form of transaction was made necessary, in a business sense, because Pacific was liquidating.

The one feature of the entire transaction which is most readily identified as "formalism" is the payment by Hall to Pacific for these assets. Although the $100,000 check was a perfectly good check drawn on a sufficient bank balance, there was no need for it to be, for no one ever expected Pacific to cash it. Pacific had no use for the money. As between Hall and Pacific, the only business objective was to transfer the assets out of Pacific and cancel Pacific's stock. Casting the transfer from Pacific to Hall in the form of a sale, to be paid for by a check which would be handed back to the drawer a few days later, had no business purpose except to try to change the tax consequences. In this context the Franchise Tax Board can quite properly regard the transfer of tangible assets to Hall as a distribution in redemption of Pacific's stock, so that this property had the same basis in Hall's hands as in Pacific's; and thus Hall realized a taxable gain when it sold the property to Rheem for a price which was in excess of Pacific's basis.

The judgment is reversed with directions to enter judgment for defendant.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 4, 1968, and respondent's petition for a hearing by the Supreme Court was denied May 15, 1968.