[Civ. No. 30084. First Dist., Div. One. July 31, 1972.]

PAUL R. HANDLERY, as Trustee, etc., et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

972

## COUNSEL

Athearn, Chandler & Hoffman, Theodore P. Lambros and Donald H. Maffly for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—The plaintiffs appeal from a judgment denying a refund of taxes paid on their income to defendant State of California Franchise Tax Board for the years 1962, 1963 and 1964.

It is a basic principle of income taxation law that an individual or corporation shall pay a tax measured by his or its own income. (See *Hoeper* v. *Tax Commission,* 284 U.S. 206 [76 L.Ed. 248, 52 S.Ct. 120, 78 A.L.R. 346].) California's Supreme Court has said: "It is a fundamental premise of tax law that each taxpayer is accountable and taxable only upon its own income . . . ." (*Great Western Financial Corp.* v. *Franchise Tax Bd.,* 4 Cal.3d 1, 5 [92 Cal.Rptr. 489, 479 P.2d 993].) California's tax statutes provide that every corporation doing business within the state shall pay "a tax according to or measured by its net income." (Rev. & Tax. Code, § 23151.) Where such a corporate enterprise is conducted wholly within the state its net income ordinarily is readily found upon its books.

But when the business is conducted in several states, often the true income derived from within a given state is difficult or even impossible of measurement. A perhaps oversimplified illustration: A corporate enterprise manufactures goods in one state which it sells at substantial profit to its subsidiary corporation in another. The second corporation because of its high wholesale costs retails the goods at a loss, thus earning no taxable income. Yet the combined enterprise operated at a profit, an undetermined amount of which is obviously attributable to the subsidiary's operations. Considerations such as this have given rise to the "unitary business," "separate business," and "formula" concepts of state income tax law.

If the operation of a business within the state is dependent upon or contributes to the operation of the business without the state, the operation is a *"unitary business."* If there is no such dependency or contribution the intrastate operation is generally considered as one or more *"separate businesses."* (See *Edison California Stores* v. *McColgan,* 30 Cal.2d 472, 481 [183 P.2d 16].)

When one or more operations within a state are treated as "separate businesses" by the state taxing authority, generally each is required to pay a tax on its own income derived from sources within the state, without regard to the profit or losses of any related operation. In the case of a "unitary business" the enterprise files a combined report, and the income from its operations within the state is determined by a formula. Under this formula in California, and generally elsewhere, the intrastate income is considered to be the same proportion of the total (intrastate and interstate)

income, as the intrastate payroll, property and sales bears to the total payroll, property and sales.

It was said in *John Deere Plow Co.* v. *Franchise Tax Bd.*, 38 Cal.2d 214, 222 [238 P.2d 569], that the formula of payroll, property, and sales "has been recognized as embracing factors sufficiently diversified to reflect 'the relative contribution of the activities in the various states to the production of the total unitary income' so as to allocate to California its just proportion of the profits earned from a unitary business." The court also stated (p. 223): "[T]he unitary income is derived from the functioning of the business as a whole, to which the activities in the various states contribute; and that by reason of such interrelated activities in the integrated overall enterprise, the business done within the state is not truly separate and distinct from the business done without the state so as reasonably to permit of a segregation of income under the separate accounting method rather than use of the formula method in assigning to the taxing state its fair share of taxable values."

Care must be taken that no more than the unitary business income fairly allocable to a state be taxed by that state. Any greater tax runs afoul of the due process and interstate commerce clauses of the United States Constitution. (See *Butler Bros.* v. *McColgan*, 315 U.S. 501, 506-510 [86 L.Ed. 991, 995-997, 62 S.Ct. 701]; *Hans Rees' Sons* v. *State of North Carolina*, 283 U.S. 123, 129-135 [75 L.Ed. 879, 898-908, 51 S.Ct. 385].) California's unitary business and formula practice has been found reasonable and in constitutional compliance. (*Butler Bros.* v. *McColgan, supra,* at pp. 506-510, *Butler Brothers* v. *McColgan*, 17 Cal.2d 664 [111 P.2d 334].)

It may accordingly be said that the "formula" apportionment of unitary business income has not only been found to be constitutionally permissible, but that it is often the only reasonable and practical manner in which a state may levy and collect taxes to which it is constitutionally entitled. It might be described as a sort of rule of necessity, having its origin in the accommodation of a state's constitutional right to tax income derived from within the state, to constitutional due process of law and interstate commerce provisions.

The action below was tried on stipulated facts.

Harry Handlery, now deceased (but whom for convenience we shall describe as a plaintiff) and his wife, plaintiff Rose Handlery, were residents of California. They directly owned or controlled over half of the voting stock of plaintiffs Handlery Hotels, Inc., Casa Hamilton Corporation, Georgian-Merritt Corporation, Hotel Monarch, Inc. and El Cortez Sky Room. Plaintiff Handlery Hotels, Inc. directly owned or controlled over

half of the voting stock of plaintiffs Bret Harte Inn, Inc. and Camino Del Rio Properties, Inc. Plaintiff Camino Del Rio Properties, Inc. directly owned or controlled over half of the voting stock of plaintiff Stardust Country Club.

The individual and corporate plaintiffs conducted all of their activities, and derived all of their income from sources, within California. All corporate plaintiffs were California corporations. In all cases the corporate entities were observed. Separate books and records were maintained for the individual and corporate plaintiffs according to accepted accounting principles. There was no basis for treating the incorporation of any of the plaintiffs as a sham.

Each of the businesses of the several plaintiffs was dependent upon and contributed to the operations of the other businesses. The ownership, control and operation of the businesses were such that if one or more of the corporate plaintiffs had conducted similar activities outside of California, then the Franchise Tax Board would have considered and treated their California operations, or at least the California corporate operations, as a unitary business.

The plaintiffs separately reported on their income tax liability to the Franchise Tax Board for the years 1962, 1963 and 1964. Some of the returns showed profit, and taxable income. Others showed losses. These losses were not offset against the profits of the more successful plaintiffs. Had such losses been so offset the overall taxes owed and paid by plaintiffs would have been $30,252 less.

Contending that they were entitled to have been treated as a unitary business, plaintiffs filed claims for a refund of $30,252 with the Franchise Tax Board. The claims were denied and this action followed.

On their appeal plaintiffs contend that although their businesses and income sources were purely intrastate in nature, nevertheless since each of them was concededly dependent upon and contributed to the operations of the others, they were *required* to report and pay taxes on their income as a unitary business. They describe themselves as an "*intrastate* unitary business." (Italics added.)

It seems desirable at this point to emphasize the meaning and coverage of the term under consideration. Insofar as we can determine, "unitary business" has always been used to denote the activity of one or more corporations or businesses as a "unit," *in two or more states or jurisdictions*. It is a technical expression peculiar to the area of state taxation. Research discloses no application of the term to one or more businesses operating in any manner solely within a single state. (See generally, 43 Words and

Phrases (perm. ed.).) Nor, apart from plaintiffs' briefs have we found anywhere, mention of an *"intrastate"* unitary business.

Defining the principle under discussion the court in *Edison California Stores* v. *McColgan, supra,* 30 Cal.2d 472, 481, stated: "If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are *unitary*; otherwise if there is no such dependency, the business within the state may be considered to be *separate.*" (Italics added.)

In an article entitled *The Unitary Concept in the Allocation of Income* (Keesling and Warren (1960) 12 Hastings L.J. 42, 46-47), the authors state: "For example, a company is engaged in the operation of a number of different businesses each of which is conducted partly within and partly without a particular taxing state. In such a case, the term *separate* may be employed to indicate that each business is a distinct business and not simply a portion of one or more of the others. [¶] As used, however, in contradistinction to *unitary,* the designation of a business as separate means simply that it is conducted wholly within a particular taxing jurisdiction and that the income attributable to that jurisdiction may appropriately be determined by use of the separate accounting method without taking into account income from property or activities located or carried on beyond the borders of the taxing jurisdiction. The method of apportionment to be employed is implicit in the classification. [¶] *Where the properties and activities within the jurisdiction are an inseparable portion of a business carried on within and without the jurisdiction, the computation of the income attributable thereto requires a computation of the income of the business as a whole or as a unit and an apportionment or allocation of the total to the various parts. This necessity of dealing with the business as a unit taking into account income from property and activities without the jurisdiction as well as within, gives rise to the classification of the business as a unitary business. Thus a unitary business may be defined simply as any business which is carried on partly within and partly without the taxing jurisdiction.* [¶] As the relationship of a business to a given taxing jurisdiction changes, the classification as *separate* or *unitary* also changes. For example, a company commences a manufacturing and selling business in State A. As long as the business is conducted wholly in that state, it is, with reference to that state, a *separate* business. Later the company opens wholesale or retail outlets in neighboring states. Although there is no inherent or intrinsic change in the nature of the business and the company is still engaged in the same business, because of the extension of the business into other states, the classification changes from *separate* to *unitary.* [¶] A change in classification may also result from a change in jurisdictions. *Thus a business*

*carried on in two or more states is, with reference to any of such states, a unitary business."* (Italics added.)

To the same general effect see: *Butler Bros. v. McColgan, supra,* 315 U.S. 501; *Ford Motor Co. v. Beauchamp,* 308 U.S. 331 [84 L.Ed. 304, 60 S.Ct. 273]; *Butler Brothers v. McColgan, supra,* 17 Cal.2d 664; *Fleming v. Oklahoma Tax Commission,* 157 F.2d 888; *Webb Resources, Inc. v. McCoy,* 194 Kan. 758 [401 P.2d 879]; *United States Tobacco Company v. Mack,* 229 Ore. 627 [368 P.2d 337]; *John I. Haas, Inc. v. Ellis,* 227 Ore. 170 [361 P.2d 820]; *Crawford Mfg. Co. v. State Commission of Rev. & Tax.,* 180 Kan. 352 [304 P.2d 504]; *Great Lakes Pipe Line Co. v. Commissioner of Taxation,* 272 Minn. 403 [138 N.W.2d 612]; *Maurice L. Rothschild & Co. v. Commissioner of Tax.,* 270 Minn. 245 [133 N.W.2d 524]; *Western Auto Supply Co. v. Commissioner of Taxation,* 245 Minn. 346 [71 N.W.2d 797]; *Cleveland-Cliffs Iron Co. v. State of Michigan,* 329 Mich. 225 [45 N.W.2d 46]; *Maxwell v. Kent-Coffey Mfg. Co.,* 204 N.C. 365 [168 S.E. 397, 90 A.L.R. 476]; Altman & Keesling, Allocation of Income in State Taxation (2d ed. 1950); Beaman, Paying Taxes to Other States (1963).

I. ■■■ Plaintiffs' first contention on their appeal is that "Revenue and Taxation Code section 25102 as implemented by 18 California Administrative Code section 24303," *required* them to report, and pay taxes, under the "unitary business-formula" method.

In our consideration of their argument we first advert to Revenue and Taxation Code section 25101, which, as pertinent, provides: "When the income of a taxpayer . . . is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by [the formula method] . . . ."[1]

---

[1]The complete text of Revenue and Taxation Code section 25101 follows: "When the income of a taxpayer subject to the tax imposed under this part is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacture, pay roll, value and situs of tangible property or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State; provided, however, that any such factors or other method of allocation shall take into account as income derived from or attributable to sources without the State, income derived from or attributable to transportation by sea or air without the State, whether or not such transportation is located in or subject to the jurisdiction of any other state, the United States or any foreign country. Income attributable to isolated or occasional transactions in states or countries in which the taxpayer is not

It is conceded that section 25101 refers to the principle of unitary business-formula income tax accounting.

It had been the "custom and practice" of the Franchise Tax Board to number its "regulations and rulings [in the Administrative Code] to correspond with the section or sections of the [Revenue and Taxation Code] which they interpret." (See Cal. Admin. Code, tit. 18, p. 1503, dated 7-25-53.)

Regulation 25101, title 18 of the Administrative Code, as relevant, stated: "(a) Methods of Allocation. Taxpayers who have income from sources within and without the State are taxable only upon the income derived from sources within the State. [¶] Where the California activities are a part of a unitary business carried on within and without the State, the portion of the unitary income subject to tax in California is generally determined by a three-factor formula of tangible property, payroll and sales. Where the activities carried on within the State are separate from the activities carried on outside this State, the income subject to tax may be determined upon a separate accounting of the California activities."

It is also conceded that Regulation 25101 refers to the principles of unitary business and separate business income tax accounting.

Revenue and Taxation Code section 25102, on which plaintiffs partially rely, states: "In the case of two or more persons, as defined in Section 19 of this code, owned or controlled directly or indirectly by the same interests, the Franchise Tax Board may permit or require the filing of a combined report and such other information as it deems necessary and is authorized to impose the tax due under this part as though the combined entire net income was that of one person, or to distribute, apportion, or allocate the gross income or deductions between or among such persons, if it determines that such consolidation, distribution, apportionment, or allocation is necessary in order to reflect the proper income of any such persons."

Section 25102 is obviously a sort of statutory catch-all designed to permit the Franchise Tax Board, when found necessary to assure the state its proper revenue, to allow combined returns or otherwise to distribute or apportion or allocate income between "persons" whether their operations be intrastate or interstate or both.

---

doing business shall be allocated to the state in which the taxpayer has its principal place of business or commercial domicile.

"If the Franchise Tax Board reallocates net income upon its examination of any return, it shall, upon the written request of the taxpayer, disclose to him the basis upon which its reallocation has been made."

We note plaintiffs' insistence that the term "combined report" as applied by section 25102 to wholly intrastate operations such as theirs, must be equated with the formula-unitary business concept of state income taxation. The contention is obviously unsound, for the formula-unitary business reporting method has but one purpose—determination of the income from interstate operations properly allocable to California. Where intrastate operations only are concerned such intrastate income is readily discernible from the books of the enterprise, without resort to any formula or other device. Moreover, section 25102 does no more than authorize the Franchise Tax Board, in its discretion, to *"permit or require* the filing of a combined report" (italics added); this gives no support to plaintiffs' contention that the Franchise Tax Board *must* do so in their case.

We now come to Regulation 24303 (tit. 18, Cal. Admin. Code, § 24303). As indicated, plaintiffs argue that this regulation, as it implements Revenue and Taxation Code section 25102, requires them to report and pay taxes as an "intrastate" unitary business.

Revenue and Taxation Code section 25102 was formerly numbered 24303, which Regulation 24303 was designed to "interpret." When the statute was renumbered, for some reason the related regulation number went unchanged.

Regulation 24303 provides: "(a) Combined Reports. [1] Where a *unitary business* is owned and controlled by the same interests, regardless of whether it is conducted in the name of two or more corporations, or in the name of one or more corporations and one or more partnerships or individuals, the income from the entire *unitary business will* first be determined as if the business had been conducted in the name of one corporation. [2] The portion of the *unitary income* derived from or attributable to California *will* be determined by means of a formula. [3] If the business in California is conducted by two or more corporations, the portion of the income attributed to California may be further apportioned between the corporations. [4] If the business in California is conducted by two or more entities, one of which is a corporation, the portion of the income attributed to California in the manner outlined above may be further apportioned between such entities.

"(b) Intercompany Transactions. In the event that business is done by a corporation in such a manner as to benefit a person or persons, directly or indirectly interested in such business, the Franchise Tax Board is authorized to require a report of such facts as it deems necessary in order to clearly determine the income of the corporation." (Italics added.)

Here it will be seen that the first two sentences of the regulation's para-

graph (a) purport to *compel* taxation of a unitary business under the formula method. When the unitary business has two or more operating entities within California, the third and fourth sentences *permit*, as does section 25102, further apportionment of income between those entities in order to protect the state's revenue, or where otherwise deemed proper or equitable.

Plaintiffs insist that the terms "unitary business" and "unitary income" of the first two sentences refer to both *interstate* and *intrastate* unitary businesses. They then invite attention to the language of the same sentences directing that the income from the entire unitary business (1) "*will* first be determined as if the business had been conducted in the name of one corporation," and (2) that the portion of the unitary income attributable to California "*will* be determined by means of a formula." We are then asked to conclude that this mandatory language imposed a duty on the Franchise Tax Board to allow plaintiffs to report and pay their taxes on a unitary business-formula basis.

We find ourselves impelled to reject plaintiffs' contentions as to the interpretation of Revenue and Taxation Code section 25102 and its related Regulation 24303.

It is clear that all four sentences of paragraph (a) of the regulation refer to unitary business taxation. We see nothing *in its text* which suggests an administrative intent that it also cover nonunitary business operations, such as those of plaintiffs.

But plaintiffs argue that since Regulation 24303 interprets the statute, section 25102, which covers both interstate and intrastate enterprises, an administrative intent is shown that the unitary business provisions of the regulation also cover purely intrastate enterprises. It follows, they insist, that the regulation commands that they be treated as a unitary business since, as they correctly point out, the Franchise Tax Board must comply with its own regulations. (See *Arizona Grocery Co.* v. *Atchison, T. & S.F. Ry. Co.*, 284 U.S. 370, 389 [76 L.Ed. 348, 355-356, 52 S.Ct. 183].)

The argument does disclose some uncertainty in the meaning and purpose of Regulation 24303. But we conclude, for the reasons we now state, that such uncertainty must be resolved in favor of the Franchise Tax Board.

1. We here defer, arguendo, to plaintiffs' argument that coverage of an "intrastate" unitary business could *also* reasonably be drawn from the language of the regulation.

The parties in the superior court stipulated that: "Pursuant to its construction of the law, the Franchise Tax Board has consistently held that the combined unitary method can be used only with respect to multicorporate

businesses conducted both within and without California. The Franchise Tax Board has consistently required the use of the separate accounting method by related corporations conducting all their operations within California."

It would be wholly unreasonable to draw plaintiffs' suggested inference that the Franchise Tax Board in drafting the regulation intended a meaning *contrary* to its consistent construction of the law.

2. Continuing our conditional deference to the argument of alternative interpretations, we must assume an intent that the regulation's technical expression "unitary business" be given its common, indeed exclusive, meaning.

Technical words and phrases are construed according to their peculiar and appropriate meaning or definition. (Civ. Code, § 13; *In re Smith,* 88 Cal.App. 464, 467-468 [263 P. 555].) ▪ And words which have acquired a particular meaning in law are to be so construed. (*Westphal* v. *Westphal,* 122 Cal.App. 379, 382 [10 P.2d 119].)

3. We observe that plaintiffs rely on the regulation as an *interpretation* of the statute, section 25102. Here the statute permits the Franchise Tax Board, *in its discretion and when found necessary or proper,* where two or more taxpayers are owned or controlled by the same interests, to require the filing of a combined report and other information. Plaintiffs argue that the board by its regulation has enlarged the scope of the statute so as to make such filing *mandatory* on the taxpayer. Obviously the board may not by its regulation renounce the discretion imposed on it by statute. (See *Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538, 548 [225 P.2d 905]; *People* v. *Monterey Fish Products Co.,* 195 Cal. 548, 558 [234 P. 398, 38 A.L.R. 1186].) ▪ And it is well-established law that an administrative agency may not exercise its rule-making power, by interpretation, implementation, or otherwise, so as to alter or enlarge the legislative act which is being administered. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) Where an administrative regulation alters or amends a statute, or enlarges or impairs its scope, courts not only may, but it is their obligation to, strike down such a regulation. (*Morris* v. *Williams,* 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

4. Reference is again made to the stipulation, quoted *ante,* that the "Franchise Tax Board has consistently held that the combined unitary method can be used only with respect to multicorporate businesses conducted both within and without California."

■ Contemporaneous administrative construction of a statute or regulation by the agency charged with its enforcement is entitled to great weight and courts will not depart from such construction unless "it is clearly erroneous or unauthorized." (*Whittell* v. *Franchise Tax Board*, 231 Cal. App.2d 278, 286 [41 Cal.Rptr. 673].) ■ In our opinion no reasonable person could conclude that the administrative construction to which the parties have stipulated, is clearly erroneous or unauthorized.

5. In the absence of a clearly expressed legislative or administrative purpose to depart from what appears to be nationwide uniform state income tax practice, judicial construction should be in keeping with natural and probable legislative or administrative intent. (*City of Glendale* v. *Crescenta etc. Water Co.*, 135 Cal.App.2d 784, 801 [288 P.2d 105].)

6. Plaintiffs point out that Administrative Code section 25101 obviously deals with interstate unitary businesses alone. They then argue that if Regulation 24303 "is limited to interstate unitary businesses, we wind up with the *absurdity* of having two separate and distinct regulations dealing with the same subject matter." (Italics added.) They also insist that if section 24303 is so construed, "*surplusage*" is created in the regulation numbered 25101. (Italics added.)

We observe no absurdity in two or more regulations dealing with the same subject matter; indeed we find it to be not at all uncommon. Nor do we find any substantial surplusage in the regulations relating to unitary businesses. Even assuming such absurdity and surplusage, as we have pointed out administrative regulations may not contravene the clear legislative purpose of the statute.

II. ■ Plaintiffs also contend that the Franchise Tax Board is *constitutionally* compelled to treat them as a unitary business. They say: "Discrimination between intrastate and interstate unitary businesses is unconstitutional because the separate classification of intrastate and interstate unitary businesses is unreasonable under the equal protection clause and such unconstitutional discrimination cannot be justified on the grounds of need."

It is here argued that it is essentially unreasonable and discriminatory for California to treat plaintiffs' intrastate operations as separate, while another otherwise similar enterprise, with but a small across the state-line operation in Nevada, would necessarily have the benefits of a unitary business classification as to its California operations and income.

To be sure the complained of classification does fall considerably short of perfection. But so also would the result sought by plaintiffs, where such

a "denial of equal protection of the law" argument would have much stronger appeal. In that case some wholly intrastate corporations would be taxed on the basis of their individual net income (Rev. & Tax. Code, § 23151), while others, as the separate plaintiff corporations here who are also doing business solely within the state, would be taxed on a different (formula) basis.

Discussing similar imperfections of state classification the United States Supreme Court in *Dandridge* v. *Williams,* 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153], stated: "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. 61, 78 . . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co.* v. *City of Chicago,* 228 U.S. 61, 69-70 . . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan* v. *Maryland,* 336 U.S. 420, 426 . . . ."

And in a situation such as that before us, where a state classification was designed to avoid constitutional conflict, the same court in *Packer Corporation* v. *State of Utah,* 285 U.S. 105, 109 [76 L.Ed. 643, 647, 52 S.Ct. 273, 79 A.L.R. 546], stated: "The classification alleged to be arbitrary was made in order to comply with the requirement of the Federal Constitution as interpreted and applied by the highest court of the state. Action by a state taken to observe one prohibition of the Constitution does not entail the violation of another."

Summarizing broad state and federal authority, Mr. Witkin states: "The equality guaranteed by the equal protection clause is equality under the same conditions, and among persons similarly situated. The Legislature may make a reasonable classification of persons and businesses and other activities and pass special legislation applying to certain classes. The classification must not be arbitrary, but must be based upon some difference in the classes having a substantial relation to a legitimate object to be accomplished." (3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1934.)

Applying the foregoing principles we must and do conclude that California's taxation statutes and regulations here under review do not deny plaintiffs, or others similarly situated, equal protection of the laws.

A related contention of plaintiffs is that, as to them, the subject tax laws and regulations are "unjust" because they are denied "the privilege of off-setting losses against gains."

For some reason presumably of benefit to them, plaintiffs chose to conduct their affairs as several separate individual and corporate entities. The overall business could have been operated by the plaintiffs Handlery as individuals, or by a single corporate structure. Under either arrangement losses would have been offset against earnings with the resulting tax advantage now sought by this litigation.

*National Carbide Corp.* v. *Comm'r.,* 336 U.S. 422 [93 L.Ed. 779, 69 S.Ct. 726, 10 A.L.R.2d 566], concerned a parent and three subsidiary corporations. A tax benefit was sought by a judicial determination that the subsidiaries were mere "agents" of the parent corporation. The argument was rejected. The court noted the election of the parent corporation to conduct business through subsidiaries rather than internal divisions, and held (p. 439 [93 L.Ed. at p. 789]): "It cannot now escape the tax consequences of that choice, no matter how bona fide its motives or longstanding its arrangements."

In *W. E. Hall Co.* v. *Franchise Tax Bd.,* 260 Cal.App.2d 179 [66 Cal. Rptr. 911], the plaintiff had chosen a form of business transaction which resulted in a Franchise Tax Board claim for taxes. It was argued that in its substance the transaction was of such a nature that no tax liability accrued. The plaintiff was held bound by the burdens of the transactional form it had selected, the court saying (p. 184), "The taxpayer does not have the same freedom to disregard the form he has chosen, as does the government."

It is also worthy of note at this point that application of the unitary business rule does not necessarily result in a tax benefit. Just as often, probably more often, a tax detriment occurs. For instances where taxpayers sought to *avoid* a unitary business status, see *John Deere Plow Co.* v. *Franchise Tax Bd., supra,* 38 Cal.2d 214; *Edison California Stores* v. *McColgan, supra,* 30 Cal.2d 472; *Chase Brass & Copper Co.* v. *Franchise Tax Bd.,* 10 Cal.App.3d 496 [95 Cal.Rptr. 805].

III.   It is next contended that "A unitary intrastate business operated by a controlled group is required to use the combined unitary method under the judicial principles announced in Edison California Stores."

In *Edison California Stores* v. *McColgan, supra,* 30 Cal.2d 472, a parent

corporation wholly owned and controlled 15 subsidiary corporations, each doing business in a different state. The plaintiff Edison California Stores was one of the subsidiaries; it did business in California. The court held that such an *incorporated* California subsidiary should be treated in the same manner as an unincorporated California "division" of a foreign corporation where each was part of a unitary business.

The case does not suggest that California must treat a group of individuals and separate corporations such as plaintiffs, engaged solely in intrastate operations, the same as a unitary business operating within and without the state.

IV.   As we have pointed out, regardless of ownership or control, several individuals, or corporations, or individuals and corporations, doing business wholly within the state have no *right* to be taxed as a unitary business. The final contention, that even if the individual plaintiffs are not to be deemed part of such a unitary business, the corporate plaintiffs must be so considered, is without merit.

For the reasons we have stated the judgment of the superior court was without error and must be affirmed.

Affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied August 29, 1972, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied October 5, 1972.