[No. B022691. Second Dist., Div. Two. Oct. 5, 1987.]

HUGO NEU-PROLER INTERNATIONAL SALES
CORPORATION, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Loeb & Loeb and John S. Warren for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—The Franchise Tax Board (Board) appeals from the judgment in favor of Hugo Neu-Proler International Sales Corporation (Hugo

Neu-Proler ISC) in the corporation's action for a refund of taxes paid. The basic question is whether there is "unity of ownership" when two corporations are equal partners in a company which owns 100 percent of a third corporation. We affirm.

The parties have stipulated to the relevant facts. Hugo Neu & Sons, Inc., is a corporation whose principal office is in New York. It is an international marketer of metals. Proler International Corporation is a corporation whose principal office is in Texas. It owns a process for cleaning scrap metal.

In 1962, Hugo Neu & Sons and Proler International formed the partnership Hugo Neu-Proler Company (Hugo Neu-Proler). Hugo Neu-Proler processed scrap metal and sold it abroad, principally to Japan. Between 1962 and 1972, Hugo Neu & Sons and Proler International each included in their respective California state income tax returns 50 percent of Hugo Neu-Proler's net income. The resulting total net income of each corporation was then apportioned to sources inside and outside California, in accordance with the Board's regulations.

In 1971, the United States Congress enacted legislation providing for "domestic international sales corporations." This was an attempt to increase United States export sales by providing preferential income tax benefits. Under federal law, a domestic international sales corporation is a domestic corporation engaged almost exclusively in the sale of domestic products for export. Such a corporation is not subject to federal income tax on its qualified export income. While a domestic international sales corporation must have a minimal capitalization of $2,500, its own bank account, and separate books and records, it need not have any employees. California has no legislation analogous to the federal domestic international sales corporation.

In 1972 Hugo Neu-Proler formed Hugo Neu-Proler International Sales Corporation (Hugo Neu-Proler ISC) to take advantage of the federal tax break. Hugo Neu-Proler ISC is a domestic international sales corporation under federal law. Hugo Neu-Proler owned 100 percent of Hugo Neu-Proler ISC's stock.

Hugo Neu-Proler and Hugo Neu-Proler ISC were parties to an agreement under which Hugo Neu-Proler ISC would buy as much of Hugo Neu-Proler's scrap metal as it could sell abroad.

After the formation of Hugo Neu-Proler ISC, Hugo Neu & Sons and Proler International continued to file their California franchise tax returns

in the same manner as before: each reported one-half of the net income of Hugo Neu-Proler, including income derived from the export sales recorded on the books of Hugo Neu-Proler ISC. Hugo Neu-Proler ISC did not file tax returns.

After an audit for the years 1972-1975, the Board determined that Hugo Neu-Proler ISC should be separated from the unitary business of each corporate partner so that its income would be separately taxed by the State of California. The Board computed a separate tax liability for Hugo Neu-Proler ISC, which the Board considered to be wholly taxable in California. The Board's assessment for the four-year period, including interest, amounted to nearly $2 million.

The unitary concept is a principle of taxation which combines two or more elements of a business whose value as an income producing operation would not be truly reflected were each element to be considered independently of the other. (Rev. & Tax. Code, § 25102; Comment, *Taxation of the Multistate Business: The Ownership Requirement of the Unitary Concept* (1978) 14 Cal. Western L.Rev. 92, 99.) If a unitary business is carried out partly inside California and partly outside California, the income must be apportioned by a formula based on property, payroll and sales. (Rev. & Tax. Code, §§ 25128-25136.) ■ "[I]t is only in circumstances where the corporation's California business is 'truly separate and distinct from its business without this state, so that the segregation of income may be made clearly and accurately, that the separate accounting method may properly be used.' [Citation.]" (*Anaconda Co.* v. *Franchise Tax Board* (1982) 130 Cal.App.3d 15, 25 [181 Cal.Rptr. 640].)

After review by the Board of Equalization, which held that Hugo Neu-Proler ISC was not part of a unitary business, Hugo Neu-Proler ISC paid the assessments and interest. It then filed a claim for a refund on June 2, 1983. After six months expired without any Board action, Hugo Neu-Proler ISC considered its claim disallowed. (Rev. & Tax. Code, § 26076.)

Hugo Neu-Proler ISC filed this action on April 16, 1984. In the trial court, Hugo Neu-Proler ISC took the position that it was a "dummy" corporation or a mere shell, making essentially no change in the business of selling scrap metal. In its trial brief, Hugo Neu-Proler ISC raised four points: Hugo Neu-Proler ISC is so lacking in substance as to not be a separate entity; it is not doing business in California; its income should be attributed to Hugo Neu & Sons and Proler International under the unitary business doctrine. Under any of these theories, Hugo Neu-Proler would not be a taxable entity in California. If none of these theories were to persuade

the trial court, Hugo Neu-Proler ISC's income must be recalculated so that it can be properly apportioned by the State of California.

The Board's opposition was that all corporations doing business in California must take their medicine and pay a franchise tax. The partners were not compelled to organize a domestic international sales corporation, and having done so, they must pay the tax consequences. Regarding the unitary business concept, the Board argued that it is inapplicable, because unity of ownership was lacking, i.e., neither corporate partnership had a more-than-50-percent interest in Hugo Neu ISC.

The trial court agreed with Hugo Neu-Proler ISC, on the basis of the unitary business doctrine. The essence of its decision was that, as a part of a unitary business, Hugo Neu-Proler ISC was not separately taxable.

In its statement of decision, the trial court said: "For purpose of Chapter 17, Article 1, of the Revenue and Taxation Code, the statutory standard for unity of ownership in a multiple entity business is '[d]irect or indirect ownership or control of more than 50 percent of the voting stock of the taxpayer' (Rev. & Tax. C. § 25105). The Court finds that this standard is met in the instant case and that [Hugo Neu-Proler ISC] should be treated as part of the unitary business [of Hugo Neu & Sons and Proler International] for these reasons:

"1. [Hugo Neu-Proler] owned 100 percent of the voting stock of [Hugo Neu-Proler ISC] and exercised total control over [it].

"2. Although a partnership is not a taxpaying entity in income tax law, partnership ownership of property clearly has legal significance.

"3. Even if the partnership is to be disregarded and the stock of [Hugo Neu-Proler ISC] is to be viewed as being owned 50 percent by each corporate partner, attribution of ownership between closely related parties, such as business partners, is a well established principle of tax law; and the statutory language ('direct or indirect ownership or control') clearly implies a legislative intent that the principle of attribution should apply to partners to satisfy the unity of ownership test in multiple entity business.

"4. Under the unitary method of taxation, business organizations are classified according to their substance, and 'the accident of different labels which may have attached to the various subsidiaries does not change the result.' Edison California Stores, Inc. v. McColgan (1947) 30 Cal.2d 472, 482, 190 P.2d 912 [183 P.2d 16]. [The California Franchise Tax Board's]

formalistic position on unity of ownership, if applied in the instant case, would contradict this principle."[1]

Judgment was entered June 20, 1986. This appeal followed.

■ The issue on appeal has been narrowed to whether Hugo Neu-Proler was part of a "unitary" business ·and thus not liable to separate taxation. The parties have stipulated to the relevant facts; therefore whether the business was unitary is a question of law. (*Anaconda Co. v. Franchise Tax Board, supra,* 130 Cal.App.3d at p. 23.) Resolution of this question in large measure depends on Revenue and Taxation Code section 25105, defining "ownership." ■ While the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, such administrative interpretation cannot prevail if erroneous or unauthorized by the applicable laws. (*Ron Yates Construction Co . v. Superior Court* (1986) 186 Cal.App.3d 337, 344 [230 Cal.Rptr. 629].) The ultimate resolution of such legal questions rests with the courts. (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

■ Whether or not a business is unitary is determined by the "three unities" test. (*Ibid.*) These are the three unities of ownership, operation and use set forth in *Butler Bros.* v. *McColgan* (1941) 17 Cal.2d 664, 678 [111 P.2d 334]. ■ The parties agree that the business was unitary when Hugo Neu-Proler Company processed and sold the scrap metal. However, the Franchise Tax Board contends that unity of ownership was destroyed when Hugo Neu-Proler International Sales Corporation was incorporated.

Revenue and Taxation Code section 25105 defines "ownership," stating: "Direct or indirect ownership or control of more than 50 percent of the

---

[1] The full opinion of the trial court is set forth by the Attorney General in appellant's opening brief. In our opinion the trial court's logic is not refuted. The above excerpt of that opinion is concluded as follows: "The Court concludes that the income of the scrap metal venture, including amounts reflected on the books and federal information returns of plaintiff, should be apportioned for California franchise tax purposes in accordance with the rules set forth in Regulation 25137-1 for partnerships of corporations where the partnership's activities are unitary with the partners' activities. Since the partners, Hugo Neu and Proler, did file their returns and pay their taxes on this basis, California received taxes measured by the net income of the venture that may fairly be deemed to be derived from or attributable to sources within the state. The additional assessments of tax to plaintiff that resulted from defendant's reallocation of the income were erroneous and should be refunded, together with interest as provided by law.

"Judgment will be entered for plaintiff in the amount of its refund claims plus interest from the date of payment of the assessments, said interest to be computed in the manner provided in section 26107 of the Revenue and Taxation Code."

We adopt it.

voting stock of the taxpayer shall constitute ownership or control for the purposes of this article." The Board asserts that since Hugo Neu and Sons, Inc., and Proler International Corporation each own 50 percent of Hugo Neu-Proler Company, which in turn owns 100 percent of Hugo Neu-Proler ISC's stock, neither Hugo Neu and Sons nor Proler International Corp. has "ownership or control of more than 50 percent of the voting stock of the taxpayer [Hugo Neu-Proler ISC]."

Plainly, neither partner directly controls more than 50 percent of Hugo Neu-Proler ISC's stock. However, section 25105 also contemplates "*indirect* ownership or control of more than 50 percent of the voting stock." (Italics added.) "Indirect ownership" is not defined in the code, nor have we found any prior cases which resolve the question.

The trial court ruled that indirect ownership was present, on two grounds: first, that the partnership owned 100 percent of the corporation's stock and exercised total control over it; and second, that ownership and control could be attributed to the business partners. We agree.

The case of *B. Forman Co. Inc.* v. *C.I.R.* (2d Cir. 1972) 453 F.2d 1144, is instructive. The court in *B. Forman* had to interpret section 482 of the United States Internal Revenue Code of 1954, concerning the allocation of income among taxpayers "owned or controlled directly or indirectly by the same interests," which is thus analogous to Revenue and Taxation Code section 25105. In that case, two unrelated corporations, McCurdy and Forman, each owned 50 percent of a third corporation, Midtown, the purpose of which was to build and operate a shopping center.

The court stated: "If Midtown was the creature of only one of the taxpayers, and all of its stock were owned by that single parent, *i.e.,* if Midtown were a strange creature having a father, but no mother, the most rigid, literal wooden interpretation of section 482 would bring Midtown within the ambit of that section. It is the contention of the taxpayers, however, that section 482 is not applicable because Midtown is the normal child of a father and a mother, the product of an earthy relationship between McCurdy and Forman, twentieth century parents exercising no control over their progeny. [¶] Midtown is the creation of a union of McCurdy and Forman—not in holy matrimony but in a legitimate business enterprise. Their interests in the existence and career of Midtown and the interests of Midtown are identical. [¶] To contend that these parents do not control their child is to fly in the face of reality. They have had complete control of Midtown from the day of conception (*its incorporation*) throughout the years relevant to this case. Every act of Midtown has been dictated by papa and mamma

who, directly or indirectly, have financed its career and controlled its every move." (*B. Forman Co., Inc.* v. *C.I.R., supra,* 453 F.2d at p. 1153.)

We believe that the Board similarly flies from reality, and flees from common sense. While neither corporate partner alone had a controlling interest in Hugo Neu-Proler ISC, together they had absolute sovereignty over it. The Board's narrow and fastidious view prevents it from seeing that the interposition of Hugo Neu-Proler ISC did not work any substantive change in the overall scrap metal operation. The enterprise retained its unitary character. Thus, the trial court properly concluded that Hugo Neu-Proler ISC could not be considered a separate taxable entity.

The judgment is affirmed.

Compton, J., and Fukuto, J., concurred.

A petition for a rehearing was denied October 29, 1987, and appellant's petition for review by the Supreme Court was denied January 21, 1988. Mosk, J., was of the opinion that the petition should be granted.