[No. D010609. Fourth Dist., Div. One. Apr. 25, 1991.]

RAIN BIRD SPRINKLER MFG. CORP., Plaintiff and Respondent,
v.
FRANCHISE TAX BOARD, Defendant and Appellant.

### COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Monteleone & McCrory, Stanton P. Belland and Philip C. Putnam for Plaintiff and Respondent.

### OPINION

**TODD, J.**—The Franchise Tax Board appeals a judgment in favor of Rain Bird Sprinkler Mfg. Corp. (RBSMC) in the corporation's action for a refund of taxes paid for the years 1974 and 1975. In this case, which deals with whether RBSMC and its affiliated corporations comprise a unitary business, the sole issue on appeal is whether majority ownership of corporations can be held by a family rather than by a single individual or entity to satisfy the "unity of ownership" prerequisite that must be established to justify the unitary business classification.

### FACTS

RBSMC was founded in 1946 by Clement M. La Fetra and his wife, Mary E. La Fetra, to manufacture impact drive sprinklers for agricultural and horticultural irrigation systems. As the corporation's business grew, other corporations were formed related to the manufacture and sales of sprinklers and related equipment. When Clement La Fetra died in 1963, his stock interest in the Rain Bird group of corporations passed to his wife and two children, Anthony W. La Fetra and Sarah La Fetra Ludwick.

By the beginning of income year 1974, the number of corporations in which Mrs. La Fetra and her two children held a majority stock interest numbered 18, including 17 engaged in various aspects of sprinkler manufacture and sales. Virtually all of the stock in all of the corporations was held by Mrs. La Fetra and her two children; the only exceptions to the complete ownership by the La Fetra family of all the corporations were certain minor stockholdings by key employees. All stock of each corporation is subject to written stock purchase agreements which prohibit the transfer of stock by a shareholder to anyone other than the corporation or its other shareholders. Mrs. La Fetra, her son and her son-in-law held virtually all corporate offices in each of the corporations. Mrs. La Fetra, her two children and her son-in-law comprised the board of directors of all corporations; only in one

company did a person outside the family (the corporation's attorney) serve on the board of directors in addition to the family directors.

On May 6, 1975, based upon a preliminary audit, the Franchise Tax Board wrote to a RBSMC affiliate corporation to advise that it appeared RBSMC and 16 of its affiliates were unitary and to invite the filing of a claim for a refund. On December 24, 1975, RBSMC filed a claim for refund in the amount of $319,744 for 1974, with the amount of the refund claim later reduced to $252,876.26. On June 16, 1976, pursuant to an extension of time granted by the Franchise Tax Board, RBSMC and its affiliates filed a combined California franchise tax return for the income year ended December 31, 1975. The combined tax return filed by RBSMC indicated combined tax prepayments in excess of the combined tax liability in the amount of $47,185, later reduced to $38,491.11.

In late 1976 and in 1977, the Franchise Tax Board audited RBSMC's claim for refund and its combined tax return and eventually requested additional information from RBSMC. On April 11, 1979, the Franchise Tax Board issued its final determination in the audit, allowing RBSMC to file on a unitary basis with only three of its affiliates for 1974 and only four of its affiliates for 1975. On July 20, 1979, RBSMC filed a timely written appeal with the State Board of Equalization, which sustained the position of the Franchise Tax Board on June 27, 1984. RBSMC filed this action in superior court on September 17, 1984.

## DISCUSSION

### I

The California franchise tax is imposed on corporations doing business in the state and is measured by net income derived from or attributable to sources within the state. (Rev. & Tax. Code,[1] §§ 23151, 25101.)

■ The unitary method of taxing interstate businesses is a principle of taxation in which several elements of a business are treated as one unit for taxation purposes, with the goal of achieving a fair valuation. (*Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 668 [111 P.2d 334], affd. 315 U.S. 501 [86 L.Ed. 991, 62 S.Ct. 701].) If a business's operation within the state is dependent upon or contributes to the business's operation outside the state, the enterprise is a "unitary business." (*Handlery* v. *Franchise Tax Board* (1972) 26 Cal.App.3d 970, 973 [103 Cal.Rptr. 465].) Without such

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

dependency or contribution, each operation is considered as one or more separate businesses. When one or more business operations are considered separate businesses, each is required to pay a tax on its own income derived from sources within the state, without regard to the profit or losses of any related operation. However, if a business enterprise is a "unitary business," it files a combined report, and the income from its operations within the state is determined by a formula based on property, payroll and sales. (§§ 25128-25136.)

In *Butler Brothers* v. *McColgan, supra*, 17 Cal.2d 664, the Supreme Court articulated a three-prong unities test to determine whether a business is unitary: unity of ownership; unity of operation, and unity of use. (*Id.* at p. 678.)[2] Here, the parties agree that unity of operation and unity of use are present; the sole issue before us is whether there is unity of ownership.

The Franchise Tax Board posits that unity of ownership can exist only when a *single* individual or entity owns more than 50 percent of the voting stock of each corporation to be included in the unitary group. Thus, the Franchise Tax Board allowed the inclusion of all the Rain Bird companies in which Mrs. La Fetra had a stock interest of more than 50 percent in the computation of a combined unitary income, but excluded from the combined reporting those companies of the Rain Bird group in which her daughter owned more than 50 percent or in which no single person or entity owned more than a 50 percent voting stock interest. RBSMC argues there was unity of ownership because the aggregate interests of the La Fetra family members made up more than 50 percent of the voting stock in each of the corporations. The issue framed for us, therefore, is whether a family exerting controlling ownership interests over the various entities involved satisfies the unity of ownership requirement.

Of the three unities, the unity of ownership has received the least attention by the courts and legal scholars. One commentator says this stems from the early cases which dealt with one corporation acting in more than one state, or with corporations wholly owned by a common parent, and led to the belief that the ownership element was self-explanatory. (Comment, *Taxation of the Multistate Business: The Ownership Requirement of the Unitary Concept* (1978) 14 Cal. Western L.Rev. 92, 108.)

---

[2] Actually, the *Butler* court did not specify that these three criteria constituted a test—or even that all three must be present. Instead, the Supreme Court stated in *Butler* that the presence of all three unities established the unitary nature of the business. However, the three unities as outlined by the *Butler* court subsequently have been considered to be the test for unitary treatment.

Hence, we find ourselves in an area with little published authority. However, there is a statute that provides guidance, as well as one case interpreting the statute. We begin our analysis by examining the statute and the case.

Section 25105 specifies the degree of ownership necessary to meet the unity of ownership test. The statute provides: "Direct or indirect ownership or control of more than 50 percent of the voting stock of the taxpayer shall constitute ownership or control for the purposes of this article." The very language of this statute—"direct or indirect"—suggests that there can be existence of effective common control between related stockholders in satisfying the unity of ownership test.

In *Hugo Neu-Proler Internat. Sales Corp.* v. *Franchise Tax Bd.* (1987) 195 Cal.App.3d 326, 332 [240 Cal.Rptr. 645], the only published case interpreting the statute, the reviewing court held ownership and control could be attributed to two corporate partners, each owning 50 percent of the stock in a third corporation. Hugo Neu & Sons, Inc., based in New York, was a corporation engaged in the international marketing of metals. Proler International Corporation, based in Texas, owned a process for cleaning scrap metal. In 1962, the two corporations formed the equal partnership of Hugo Neu-Proler Company for the purpose of processing scrap metal and selling it abroad. The partnership in 1972 formed Hugo Neu-Proler International Sales Corporation, a California corporation, to take advantage of a federal tax break for domestic international sales corporations. The partnership owned 100 percent of the domestic international sales corporation's stock. After the domestic international sales corporation was formed, both parent corporations continued to file their California franchise tax returns in the same manner as before: each reported one-half of the net income of the partnership, including income derived from the export sales recorded on the books of the domestic international sales corporation. The domestic international sales corporation did not file tax returns. The Franchise Tax Board determined that the domestic international sales corporation should be separated from the unitary business of each corporate partner so that its income would be separately taxed by the state. The board said unity of ownership was lacking because neither corporate partner had a more-than-50-percent interest in the domestic international sales corporation.

The Court of Appeal approved of the trial court's finding that " 'attribution of ownership between closely related parties, such as business partners, is a well established principle of tax law; and the statutory language ("direct or indirect ownership or control") clearly implies a legislative intent that the principle of attribution should apply to partners to satisfy the unity of

ownership test in multiple entity business.'" (*Hugo Neu-Proler Internat. Sales Corp., supra,* 195 Cal.App.3d at p. 330.)

In assessing the "indirect" language of section 25105, the court in *Hugo Neu-Proler Internat. Sales Corp., supra,* found analogous Internal Revenue Code section 482,[3] which permits the allocation of income among taxpayers "owned or controlled directly or indirectly by the same interests" (26 U.S.C.A. § 482).[4] In effect, the court said the Franchise Tax Board's argument that controlling ownership can never exist in the absence of majority stock ownership "flies from reality, and flees from common sense. While neither corporate partner alone had a controlling interest in [the domestic international sales corporation], together they had absolute sovereignty over it." (*Hugo Neu-Proler Internat. Sales Corp., supra,* 195 Cal.App.3d at p. 333.)

We agree with the result in *Hugo Neu-Proler Internat. Sales Corp., supra.* It cannot be disputed that an important rationale for the unity of ownership requirement is the need for the existence of effective common control over a functionally integrated business entity. It is the reality of control, not its form or mode, that should be determinative. As one commentator phrased it: "It is difficult to discern a policy reason for precluding attribution of ownership [among family members] and difficult also to reconcile this stance with the statutory language that speaks of 'direct or indirect ownership or control.'" (Warren, *How Unitary Is Your Business?* L.A. Law. (Oct. 1986) 36, 40-41.)

---

[3] Internal Revenue Code section 482 is the federal counterpart to sections 24725 and 25102.

[4] The court relied on *B. Forman Company* v. *C. I. R.* (2d Cir. 1972) 453 F.2d 1144, which interpreted section 482 of the Internal Revenue Code. In that case, two unrelated corporations, McCurdy and Forman, each owned 50 percent of a third corporation, Midtown, which was formed to build and operate a shopping center. The court observed: "If Midtown was the creature of only one of the taxpayers, and all of its stock were owned by that single parent, *i.e.,* if Midtown were a strange creature having a father, but no mother, the most rigid literal wooden interpretation of section 482 would bring Midtown within the ambit of that section. It is the contention of the taxpayers, however, that section 482 is not applicable because Midtown is the normal child of a father and a mother, the product of an earthy relationship between McCurdy and Forman, twentieth century parents exercising no control over their progeny. [¶] Midtown is the creation of a union of McCurdy and Forman—not in holy matrimony but in a legitimate business enterprise. Their interests in the existence and career of Midtown and the interests of Midtown are identical. [¶] To contend that these parents do not control their child is to fly in the face of reality. They have complete control of Midtown from the day of conception (its incorporation) throughout the years relevant to this case. Every act of Midtown has been dictated by papa and mamma who, directly or indirectly, have financed its career and controlled its every move." (*B. Forman Company* v. *C. I. R., supra,* 453 F.2d at p. 1153.)

Nothing in the language of section 25105 requires that ownership be held by a single individual or entity to meet the unity of ownership test. Nor does anything in the language of the statute preclude the ownership test from being met where ownership is held by the members of a closely related group. In *Hugo Neu-Proler Internat. Sales Corp., supra*, 195 Cal.App.3d 326, the court held section 25105 is satisfied by indirect ownership or control by business partners who operated under a written partnership agreement. Here, the facts also present a cogent argument in favor of unity of ownership under the statute. We have a situation that typifies the family business which has passed from the founder. A mother and her children hold virtually all of the stock of each corporation in the unitary group. All companies are operated on a consensus basis, maintaining strict ownership or control within the family. The Franchise Tax Board unconvincingly tries to distinguish *Hugo Neu-Proler Internat. Sales Corp., supra*, by arguing the concept of family control is legally insufficient and noting families often are subject to disagreements and differing interests. Attribution of stock among family members is an established principle of tax law. Further, we note, contrary to the Franchise Tax Board's rhetoric that "[n]othing binds the stockholders in the instant case except blood and marriage," there are written stock purchase agreements for each corporation which prohibit the transfer of stock by a shareholder to anyone other than the corporation or its shareholder. We simply cannot say that in this case the familial relationships were less likely to result in concerted action than the partnership agreement in *Hugo Neu-Proler Internat. Sales Corp., supra*.

In addition to trying to distinguish *Hugo Neu-Proler Internat. Sales Corp., supra*, 195 Cal.App.3d 326, the Franchise Tax Board argues the case was wrongly decided.[5] Thus, the Franchise Tax Board asks us to disregard the only case authority on point and instead rely on the administrative interpretations of itself (see § 23004) and of the State Board of Equalization,

---

[5] The Franchise Tax Board argues the *Hugo Neu-Proler Internat. Sales Corp., supra*, court erred by (1) applying section 25105 to section 25102, which is not at issue in this appeal, (2) ignoring the legislative history of section 25105 which demonstrates that the statute has no applicability to section 25101, and (3) interpreting section 25105 by making an analogy to Internal Revenue Code section 482 (see fns. 3 and 4, *ante*). We find all of these arguments seek to preclude us from applying section 25105 to this case, and we find none of them persuasive. Section 25105 clearly states that it defines ownership "for the purposes of this article." Sections 25101, 25102 and 25105 are among the statutes that comprise article 1 of chapter 17 of the Revenue and Taxation Code. We do not find it necessary to dwell on the legislative history of section 25105 as laboriously set out by the Franchise Tax Board for the rule has long been recognized that if statutory language is "clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) By its unambiguous terms, section 25105 applies to section 25101, which, the Franchise Tax Board acknowledges, is the relevant statute in this case.

which reviews appeals from the decisions of the Franchise Tax Board (see § 26077). ■ While an interpretation put forth by an administrative agency charged with enforcement, implementation and interpretation of enactments is entitled to great weight (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]), a court may properly accept or reject it according to the validity of its reasoning, its consistency, "and all those factors which give it power to persuade, if lacking power to control." (*Skidmore* v. *Swift & Co.* (1944) 323 U.S. 134, 140 [89 L.Ed. 124, 129, 65 S.Ct. 161]; see 2 Davis, Administrative Law Treatise (2d. ed. 1979) §§ 7.8, 7.10, pp. 36-43, 50-54.) ■ Here, we decline to accept the administrative interpretation for the reasons that follow.

We find a checkered pattern of interpretation by the State Board of Equalization with respect to the question of family control versus single individual or entity control as satisfying the unity of ownership requirement. In 1970, the State Board of Equalization rejected the Franchise Tax Board's position in *Appeal of Shaffer Rentals, Inc.*, California Tax Reporter (CCH) paragraph 204-377 (Sept. 14, 1970), ruling that two corporations with virtually the same owners, in differing proportions, but with no one person owning a majority in either business were unitary. William A. Shaffer had organized the business, a tool company, and developed it into an international enterprise, with four corporations: Shaffer Tool Works, the majority owner of Shaffer Western Hemisphere, Inc., and Shaffer de Mexico, S.A., and Shaffer Rentals, Inc. After William Shaffer died, ownership of Shaffer Tool Works was distributed among his three children, ten grandchildren, and trusts for these persons in varied percentages. Shaffer Rentals was owned in three 16-percent shares by the three children with the remaining 52 percent held in trust. The State Board of Equalization explicitly rejected the Franchise Tax Board's contention that controlling ownership must be held by only one person or entity and instead ruled that Shaffer's son, who managed the businesses, controlled all of the family's interests. The State Board of Equalization relied on two analogous federal tax court decisions to support its holding that controlling ownership need not by held by one individual or entity. However, in 1984, in another family control case, the State Board of Equalization explicitly overruled *Shaffer Rentals*, adopting the position of the Franchise Tax Board that for unity of ownership to exist, controlling ownership of all involved corporations must be held by one individual or entity. (*Appeal of Douglas Furniture of California, Inc.*, Cal. Tax Rptr. (CCH) ¶ 400-646 (Jan. 31, 1984).) The taxpayer in *Douglas Furniture* appealed to the Superior Court of Los Angeles County, which reversed the State Board of Equalization. Subsequently, the Franchise Tax Board appealed to the Court of Appeal, which upheld the superi-

or court in an unpublished opinion. (*Douglas Furniture of California, Inc.* v. *Franchise Tax Board* (Nov. 4, 1988) B032576.) As counsel for the Franchise Tax Board acknowledged to the trial court below, the State Board of Equalization's decision in the *Douglas* case loses its effectiveness because of the Los Angeles Superior Court decision.[6]

Our reluctance to be bound by the administrative agency's position in this case also stems from our disagreement with its bright-line test of more than 50 percent *and* a single individual or entity.

The problem with the administrative construction which imposes the single individual or entity restriction on top of the more-than-50-percent rule is that it is inconsistent with present corporate realities. Nowhere in the State Board of Equalization cases is there any explanation why the single individual or entity requirement is necessary. In today's corporate world, with stock ownership widely scattered, minority control is more common than majority control. We must surmise the law in this area is directed toward recognizing business realities. When there are two or more businesses operating as a single enterprise and a majority of each is owned by the same persons acting in concert, it is unrealistic to deny the unitary nature of the enterprise on the basis of lack of unity of ownership. Here, we have closely related family members who own a majority of the stock in each of the corporations and operate them as a single business enterprise. The reality is this family has one business enterprise, not a multitude.

The administrative interpretation also could result in unequal treatment to family businesses. If the founder of a multicorporation unitary business has one heir, the unitary nature of the business will continue with the succeeding generation. However, if the founder has more than one heir, the family business would lose its unitary nature when the founder dies if we adopt the administrative rule.

## II

The Franchise Tax Board also makes two assignments of error with respect to the trial court's judgment below: (1) the trial court violated rule 977 of the California Rules of Court by relying on an unpublished opinion of the Court of Appeal; and (2) the trial court improperly applied the

---

[6] Were we inclined to follow the administrative interpretation blindly, there is a host of State Board of Equalization cases subsequent to *Douglas Furniture* that adopt its rationale. (See e.g., *Appeal of Taylor Topper, Inc.*, Cal. Tax Rptr. (CCH) ¶ 400-647 (Jan. 31, 1984); *Appeal of B.K.I. Management Co., Inc. et al.*, Cal. Tax Rptr. (CCH) ¶ 400-815 (Apr. 5, 1984); *Appeal of P and M Lumber Products*, Cal. Tax Rptr. (CCH) ¶ 400-902 (June 27, 1984).)

doctrine of estoppel against the Franchise Tax Board. We need not consider either purported error[7] since they are irrelevant to this court's mission here. The sole issue before us is whether as a matter of law there is unity of ownership within the Rain Bird group of corporations. Factual issues have never been at issue since the parties stipulated to all of the facts.

When presented with uncontradicted facts on appeal in tax matters, the appellate court is free to make its own determinations. (*Automatic Canteen Co.* v. *State Board of Equalization* (1965) 238 Cal.App.2d 372, 381 [47 Cal.Rptr. 848].) Our review of the legal question at issue is undertaken independently and we are not bound by the trial court's determination. Thus, it simply is not relevant to our decision here whether the trial court violated a rule of court or improperly applied a legal doctrine.

### DISPOSITION

Affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied May 21, 1991.

---

[7] We note that in light of the fact there is no statement of decision, these assignments of error are highly speculative. As far as we can tell, the Franchise Tax Board makes these assignments of error on the basis of certain comments made by the trial court in the course of the trial. We are not convinced (1) the trial court's comments relied upon by the Franchise Tax Board were not taken out of context and (2) when the reporter's transcript is read in its entirety one can find support for the board's assertion that the trial court based its decision on erroneous bases.