[No. A064957. First Dist., Div. Three. July 25, 1995.]

A. M. CASTLE & CO., Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A., II.C. and II.D.

**COUNSEL**

Robert E. White, Susan C. Rushakoff and Jerry M. Aufox for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Respondent.

---

## OPINION

PARRILLI, J.—A. M. Castle & Co. (Castle) appeals after the trial court denied its claim for a refund of corporate franchise taxes for the tax years 1975 through 1978. The court concluded Castle was unitary with its wholly owned subsidiary, Hy-Alloy Steels Co. (Hy-Alloy), and found that California could therefore include Hy-Alloy's income in its tax calculation, even though Hy-Alloy did not directly do business in California. We affirm.

## I. FACTS

California imposes a franchise tax on corporations doing business within this state. The tax depends on the corporation's net income attributable to in-state sources. (Rev. & Tax. Code, §§ 23151, 25101.)[1] When a corporation doing business in this state has a wholly owned subsidiary operating outside the state, the Franchise Tax Board (Board) must determine whether the subsidiary is "unitary with" the business operating in this state. If it is, the Board combines the income from the out-of-state subsidiary with the income from the corporation doing business in this state and, based on an objective formula, taxes that portion of the *total* income which is attributable to this state. (See *Tenneco West, Inc.* v. *Franchise Tax Bd.* (1991) 234 Cal.App.3d 1510, 1518-1519 [286 Cal.Rptr. 354].) Here, the Board determined that Castle and Hy-Alloy were a unitary business for tax years 1975 through 1978. The Board accordingly combined the income from the two companies and assessed an additional tax of $242,568.49. Castle paid the tax and filed this action for refund.[2]

Castle is a Delaware corporation[3] with headquarters in Franklin Park, Illinois. It is a nationwide competitor in the "metals service center industry."

---

[1] Unless otherwise noted, subsequent statutory references are to the Revenue and Taxation Code.

[2] Although in this case the finding of a unitary business resulted in a higher tax, that is not always the case. In other cases—such as where the out-of-state business suffers a loss or is less profitable than the in-state business—the taxpayer itself may argue that the business is unitary in order to dilute or reduce the share of its income subject to California tax. (See *Chase Brass & Copper Co.* v. *Franchise Tax Bd.* (1970) 10 Cal.App.3d 496, 500 [95 Cal.Rptr. 805] and cases cited therein.)

[3] The parties tried this action primarily on the basis of stipulated facts. However, Castle supplemented the stipulated facts with testimony from its then president, Michael Simpson, and the Board introduced additional documentary evidence.

Generally, Castle buys bulk metals from various mills, and then warehouses and processes those metals for resale to industrial customers. Castle has offices and service centers throughout the United States, including six in California. During the tax years at issue, Castle had more than 1,300 employees nationwide.

Castle sells a wide range of steel, nickel, copper-alloy and aluminum products. Customers may purchase all metal products in standard shapes and dimensions which Castle maintains in its inventory. In addition, Castle often processes the metals to a customer's individual specifications. Castle has sophisticated metal processing equipment at all of its service centers.

For the period pertinent to this appeal, Hy-Alloy was Castle's wholly owned subsidiary. Hy-Alloy is a Delaware corporation with a single office in Bedford Park, Illinois. It has approximately 70 employees at that one site. Hy-Alloy distributes specialty metal alloy shapes, including rounds, squares, hexes, flats and tubing for use in aircraft and other high technology commercial products. It buys these shapes directly from the manufacturers. Unlike Castle, Hy-Alloy does not process metal to its customers' specifications; at most, it provides simple cutting services. Nevertheless, the Department of Commerce has classified the two companies as belonging to the same industry. Hy-Alloy makes sales nationwide from its single office in Illinois. All Hy-Alloy sales to California are free on board (FOB), Bedford Park, Illinois. Hy-Alloy has no facilities or agents in California.

Castle purchased Hy-Alloy in 1973 to gain access to the specialty aircraft metals market. Castle's 1973 annual report[4] stated that "[i]n February of 1973, the Company purchased the assets of Hy-Alloy Steels Company, a merchandiser of alloy bars and tubing. This acquisition makes Castle a major factor in the distribution of alloy steels in the Midwest and provides a basis for expanding our alloy operations in other parts of the country."

Before Castle acquired Hy-Alloy, Castle's sales of Hy-Alloy's product line were minimal. After the acquisition, Hy-Alloy's sales to Castle—and Castle's resales of those products to its own customers—grew substantially. In 1975 Castle accounted for 31 percent of Hy-Alloy's total sales of approximately $10.9 million. By 1978 Castle accounted for 48 percent of Hy-Alloy's total sales, which then amounted to $26.9 million. Similarly, Castle's purchases from Hy-Alloy accounted for only 2.05 percent of Castle's

---

[4]Castle contends that Castle's 1973 annual report did not go into evidence. At the end of trial, Castle objected to the 1973 report as irrelevant. The trial court stated it would rule on the objection once it had reviewed the entire report. The trial court relied on the 1973 report in its statement of decision. Presumably, this means the trial court found the report relevant and admitted it into evidence.

total metal purchases in 1975, but by 1978 that figure had increased to 5.44 percent of total metal purchases. During the tax years in question, Castle's sales of alloy steels, expressed as a percentage of its total sales, were 12 percent in 1975, 9 percent in 1976, 12 percent in 1977, and 17 percent in 1978. Castle purchased alloy steels from Hy-Alloy at Hy-Alloy's lowest bracket market prices.

In its 1978 annual report, Castle recognized Hy-Alloy's importance to its overall corporate strategy. The report noted that, in order to decrease the impact of economic cycles in the metals industry, Castle management "decided to emphasize the more technical products such as alloy steels [and other products]. [¶] In 1978 many sizes and grades of alloy steel were added, greatly enhancing our reputation as a national alloy bar source. Customer response has been positive and led to the approval of a 34,000 square foot addition to our Hy-Alloy subsidiary. . . . This program will make us one of the nation's leading sources for these products. [¶] February 1979 marked the sixth year since we acquired Hy-Alloy Steels Co. In each of those years, the subsidiary has made substantial contributions to the company profitability through sales to its own customers and as an alloy source to all of Castle's locations." Castle helped finance Hy-Alloy's warehouse expansion by sponsoring an industrial revenue bond. This method of financing provided Hy-Alloy with a lower interest rate than it would have been able to obtain on its own. Castle also loaned Hy-Alloy $1.5 million in 1977, which Hy-Alloy repaid in 1988.

In addition to the considerable economic interdependence between Castle and Hy-Alloy, there was considerable overlap between the two companies' directors and management. Throughout the period at issue, all of Hy-Alloy's directors were also Castle executives. Moreover, from 1975 through 1978 Michael Simpson was president of Hy-Alloy and maintained a seat on Castle's 11-member board of directors.[5] R. J. Heggie served as the chairman of the boards of both corporations in 1977-1978. E. F. Culliton was the secretary/treasurer of both corporations in each of the four years. No other officer of Hy-Alloy was also an officer or director of Castle. Castle routinely received five- and fifteen-day activity reports from Hy-Alloy.

Despite the close economic and managerial relationship between Castle and Hy-Alloy, the two corporations maintained separate administrative operations. There was no central advertising, accounting, legal, research and development, or personnel department. The two companies also retained different law firms as their outside legal counsel.

---

[5]Even before Castle finished acquiring Hy-Alloy, it intended to install one of its own employees, Michael Simpson (the son of Castle's chairman), as Hy-Alloy's new manager.

Except for a shared health and accident plan, the two corporations did not share primary insurance policies or brokers. In two of Castle's umbrella policies, Hy-Alloy was named as an additional insured. Each company otherwise obtained its own insurance coverage for all aspects of its business.

Based on this evidence, the trial court concluded Castle and Hy-Alloy constituted a unitary business. The court found there was unity of "use, operation and ownership" between the two companies, and also found that "Castle contributed to and depended on Hy-Alloy so that the two companies formed a functionally related enterprise in which factors of profitability arose from the operation of the business as a whole."

Castle filed a timely appeal from the judgment entered in favor of the Board.

## II.  DISCUSSION

### A.  *The Trial Court Did Not Give Collateral Estoppel Effect to a Related Kansas Decision**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### B.  *The Trial Court Properly Found Castle and Hy-Alloy Were Unitary*

■ The heart of Castle's appeal is its contention that the stipulated facts and other evidence simply do not support a finding of unity. We disagree.

■ In reviewing the trial court's decision on the unity issue, we must accept its factual findings to the extent substantial evidence supports them. However, the ultimate issue of whether those facts establish that the business is unitary is a question of law upon which we exercise our independent judgment. (*Dental Ins. Consultants, Inc.* v. *Franchise Tax Bd.* (1991) 1 Cal.App.4th 343, 347 [1 Cal.Rptr.2d 757] (*Dental Consultants*); *Tenneco West, Inc.* v. *Franchise Tax Board, supra*, 234 Cal.App.3d 1510, 1520-1521 (*Tenneco*); *Standard Register Co.* v. *Franchise Tax Board* (1968) 259 Cal.App.2d 125, 130 [66 Cal.Rptr. 803].)

#### 1.  *California Employs Alternative Tests to Determine Unity*

■ At the outset, the parties disagree concerning what test (or tests) we must apply to determine whether two separate corporations constitute a

---

*See footnote, *ante*, page 1794.

unitary business. Castle contends we must apply the so-called "three unities" test and must find that all three unities (ownership, operation and use) exist before we can conclude that two separate entities constitute a unitary business. The Board, on the other hand, contends the "three unities" are not the sine qua non to a unitary business. In the Board's view, two entities are unitary when the business conducted within this state is dependent upon or contributes to the operation of the business outside the state. We believe the Board's position is correct.

█ By way of background, the due process and commerce clauses of the federal Constitution place restrictions on a state's power to tax interstate businesses. In particular, a state may not impose an income tax on " 'value earned outside its borders.' " (*Container Corp.* v. *Franchise Tax Bd.* (1983) 463 U.S. 159, 164 [77 L.Ed.2d 545, 552, 103 S.Ct. 2933].) "In the case of a more-or-less integrated business enterprise operating in more than one State, however, arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice. [Citations.]" (*Ibid.*) Consequently, the United States Supreme Court has not imposed a single formula on the states, but has imposed on the *taxpayer* the " ' "distinct burden of showing by 'clear and convincing evidence' that [the state tax] results in extraterritorial values being taxed . . . ." ' [Citations.]" (*Ibid.*)

The "unitary business/formula apportionment method"[7] is a widely accepted procedure for allocating value among the states. That method is the basis for the Uniform Division of Income for Tax Purposes Act (Division of Income Act), which has been adopted by 23 states, including California. (*Container Corp.* v. *Franchise Tax Bd.*, *supra*, 463 U.S. at p. 165 [77 L.Ed.2d at p. 553]; §§ 25120-25139; see generally, "Table of Jurisdictions Wherein Act Has Been Adopted," 62 West's Ann. Rev. & Tax. Code (1995 pocket pt.) pp. 153-154.) Under the unitary business method of income allocation, a state calculates the local tax base "by first defining the scope of the 'unitary business' of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that 'unitary business' between the taxing jurisdiction and the rest of the world on the basis of a[n objective] formula . . . ." (*Container Corp.*, *supra*, 463 U.S. at p. 165 [77 L.Ed.2d at p. 553].)

The Supreme Court has approved the constitutionality of the unitary business method of income allocation, subject to certain constraints. (*Container Corp.*, *supra*, 463 U.S. at p. 165 [77 L.Ed.2d at p. 553].) In particular,

---

[7]For purposes of brevity, we refer to this test as the "unitary business method."

the taxpayer must conduct at least part of the unitary business in the taxing state, and there must be "some bond of ownership or control uniting the purported 'unitary business.'" (*Id.* at p. 166 [77 L.Ed.2d at pp. 553-554].) In addition, the out-of-state activities of the unitary business must "be related in some concrete way to the in-state activities. The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation." (*Ibid.* [77 L.Ed.2d at p. 554]; see also *Mole-Richardson Co.* v. *Franchise Tax Bd.* (1990) 220 Cal.App.3d 889, 894-895 [269 Cal.Rptr. 662] (*Mole-Richardson*).)

As indicated, California has adopted the Division of Income Act and therefore taxes interstate businesses on the basis of the unitary business method. In California, "[w]hen one or more business operations are considered separate businesses, each is required to pay a tax on its own income derived from sources within the state, without regard to the profit or losses of any related operation. However, if a business enterprise is a 'unitary business,' it files a combined report, and the income from its operations within the state is determined by a formula based on property, payroll and sales. (§§ 25128-25136.)" (*Rain Bird Sprinkler Mfg. Corp.* v. *Franchise Tax Bd.* (1991) 229 Cal.App.3d 784, 787-788 [280 Cal.Rptr. 362], quoted in *Tenneco, supra,* 234 Cal.App.3d at p. 1519; see also *Dental Consultants, supra,* 1 Cal.4th at p. 347.)

Courts have generally used two tests to determine whether related business entities are engaged in a unitary business. The first is known as the "three unities test." Under this test, unity exists where there is (1) unity of ownership; (2) unity of operation evidenced by central purchasing, management, accounting and the like; and (3) unity of use in the centralized executive force and general system of operations. (*Appeal of A.M. Castle & Co.* (1989) 245 Kan. 739 [783 P.2d 1286, 1289]; *Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 678 [111 P.2d 334]; *Dental Consultants, supra,* 1 Cal.App.4th at pp. 347-348; *Tenneco, supra,* 234 Cal.App.3d at p. 1525; Keesling & Warren, *The Unitary Concept in the Allocation of Income* (1960) 12 Hastings L.J. 42, 47-48 (hereafter *The Unitary Concept*).)

The second widely accepted test is the "dependency or contribution" test. Under this more general test, a business is unitary if ". . . there is evidence to indicate that the segments under consideration are . . . dependent upon or

contribute to each other and the operations of the taxpayer as a whole." (Cal. Code Regs., tit. 18, § 25120, subd. (b)[8]; *Appeal of A.M. Castle & Co., supra,* 783 P.2d at p. 1289; see also *Edison California Stores* v. *McColgan* (1947) 30 Cal.2d 472, 481 [183 P.2d 16]; *Dental Consultants, supra,* 1 Cal.App.4th at p. 347; *Tenneco, supra,* 234 Cal.App.3d at p. 1525; *Mole-Richardson, supra,* 220 Cal.App.3d at p. 895; *The Unitary Concept, supra,* 12 Hastings L.J. at p. 48.) Either test is constitutionally permissible. *(Container Corp.* v. *Franchise Tax Bd., supra,* 463 U.S. at p. 175-176 [77 L.Ed.2d at p. 560].)[9]

The California Supreme Court has utilized *both* tests. The Supreme Court first announced the three unities test in *Butler Brothers* v. *McColgan, supra,* 17 Cal.2d at page 678. There, the high court stated the unitary nature of a business is "definitely established" if all three unities exist. *(Id.* at p. 678.) Later, in *Edison California Stores* v. *McColgan, supra,* the Supreme Court announced what is now known as the "dependency or contribution" test. The *Edison* court stated: "If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary . . . ." (30 Cal.2d 472, 481.)

There is some confusion in later California cases concerning the relationship between the two tests. Some cases suggest the two tests are *alternative* methods for finding unity. (See, e.g., *Dental Consultants, supra,* 1 Cal.App.4th at pp. 347-348 ["Alternative tests have been developed to [determine unity]. . . . These tests are not mutually exclusive, and application of either to a particular set of facts should result in the same conclusion."]; *Tenneco, supra,* 234 Cal.App.3d at p. 1525; *Mole-Richardson, supra,* 220 Cal.App.3d at p. 895[10]; *Handlery* v. *Franchise Tax Board* (1972) 26 Cal.App.3d 970, 973 [103 Cal.Rptr. 465]; *Standard Register Co.* v. *Franchise Tax Board* (1968) 259 Cal.App.2d 125, 137-138 [66 Cal.Rptr. 803]; see also

---

[8]Subsequent references to title 18 are to the California Code of Regulations.

[9]This follows from the principle that the Supreme Court "will, if reasonably possible, defer to the judgment of state courts in deciding whether a particular set of activities constitutes a 'unitary business.' " *(Container Corp.* v. *Franchise Tax Bd., supra,* 463 U.S. at p. 175 [77 L.Ed.2d at p. 560]; see also *Honolulu Oil Corp.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 417, 425 [34 Cal.Rptr. 552, 386 P.2d 40] ["This court is under no compulsion to employ the identical tests approved by the Supreme Court as to other states' statutes, as long as the test so employed in this state does not infringe constitutional rights."].)

[10]*Mole-Richardson* stated that "A *general* test to determine whether a business is unitary is ' "[i]f the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state . . ." ' [Citations.] A *three-part* test was set out in *Butler Brothers* v. *McColgan* . . . and remains viable today . . . ." (220 Cal.App.3d at p. 895, italics added, quoted in *Tenneco, supra,* 234 Cal.App.3d at p. 1525.)

*Colgate-Palmolive Co.* v. *Franchise Tax Bd.* (1992) 10 Cal.App.4th 1768, 1774, fn. 2 [13 Cal.Rptr.2d 761].) Moreover, one law review article has stated the two tests are not only alternatives, but that the dependency or contribution test "is a vast improvement upon" the three unities test. (*The Unitary Concept, supra*, 12 Hastings L.J. at p. 48.)

However, other California cases suggest the "three unities" are a part of the more general dependency or contribution test. These cases imply the three unities are the sine qua non to finding a unitary business. (See, e.g., *Superior Oil Co.* v. *Franchise Tax Bd.* (1963) 60 Cal.2d 406, 412 [34 Cal.Rptr. 545, 386 P.2d 33] [citing *Edison California Stores* for the proposition that the three unities are the " 'elements of a unitary business' "]; *Chase Brass & Copper Co.* v. *Franchise Tax Bd., supra*, 10 Cal.App.3d 496; *Household Finance Corp.* v. *Franchise Tax Board* (1964) 230 Cal.App.2d 926, 929 [41 Cal.Rptr. 565].)

To the extent there is a conflict in the case law on this issue, we choose to follow the cases which suggest the two tests are *alternative* methods for determining unity. We reach this decision for the following reasons: first, the seminal case on the three unities test stated that the unitary nature of a business is "definitely established" when the three unities exist. (*Butler Brothers* v. *McColgan, supra*, 17 Cal.2d 664, 678.) The Supreme Court did not state the obverse: namely, that unity *cannot* exist where one of the three unities is absent. Second, the pertinent California regulations do not apply the "three unities" test to determine if a taxpayer is engaged in a single trade or business. Instead, under the regulations, "[t]he determination of whether the activities of the taxpayer constitute a single trade or business or more than one trade or business will turn on the facts in each case. In general, the activities of the taxpayer will be considered a single [i.e. unitary] business if there is evidence to indicate that the segments under consideration are integrated with, dependent upon or contribute to each other and the operations of the taxpayer as a whole."[11] (Tit. 18, § 25120, subd. (b).) We must show deference to the regulatory construction of California's tax laws.

---

[11]The regulations list the following factors which create a "strong presumption" that the taxpayer is engaged in a single (i.e. unitary) business: "(1) Same type of business: A taxpayer is generally engaged in a single trade or business when all of its activities are in the same general line. For example, a taxpayer which operates a chain of retail grocery stores will almost always be engaged in a single trade or business. [¶] (2) Steps in a vertical process: A taxpayer is almost always engaged in a single trade or business when its various divisions or segments are engaged in different steps in a large, vertically structured enterprise. For example, a taxpayer which explores for and mines copper ores; concentrates, smelts and refines the copper ores; and fabricates the refined copper into consumer products is engaged in a single trade or business, regardless of the fact that the various steps in the process are

(*Container Corp. of America* v. *Franchise Tax Bd.* (1981) 117 Cal.App.3d 988, 1000 [173 Cal.Rptr. 121].) Finally, there is no constitutional constraint which compels us to apply the three unities test in all cases. (*Container Corp.* v. *Franchise Tax Bd., supra,* 463 U.S. at p. 175 [77 L.Ed.2d at pp. 559-560]; *Honolulu Oil Corp.* v. *Franchise Tax Bd., supra,* 60 Cal.2d at p. 425.) We may constitutionally apply any test to determine unity as long as there is "a flow of *value*" between the segments which make up a unitary business. (*Container Corp.* v. *Franchise Tax Bd., supra,* at p. 178 & fn. 17 [77 L.Ed.2d at p. 561].)

### 2. *The Three Unities Test*

■■ The evidence establishes unity of ownership and unity of use between Castle and Hy-Alloy. Unity of ownership is present when one corporation owns an entire subsidiary. (*Chase Brass & Copper Co.* v. *Franchise Tax Bd., supra,* 10 Cal.App.3d at p. 502.) Unity of use refers primarily to the integration and control of executive forces. (*Id.* at p. 504.) Given that Castle executives made up the entire Hy-Alloy board of directors, Castle was effectively able to control Hy-Alloy, at least with respect to major policy decisions. Unity of use exists where one corporation controls another corporation with respect to major policy matters at the highest levels. (See *ibid.*; *Anaconda Co.* v. *Franchise Tax Board* (1982) 130 Cal.App.3d 15, 27 [181 Cal.Rptr. 640].) Castle clearly had that opportunity—and apparently exercised it—with respect to Hy-Alloy. Consequently, unity of use is present in this case. (Cf. *Tenneco, supra,* 234 Cal.App.3d at p. 1527 [where the court found Tenneco did not exercise strong central management over its subsidiaries based on Tenneco's *express* policy that subsidiaries are " 'highly decentralized with each division given an unusual degree of autonomy.' "].)

However, the unity of operation element presents a closer question. Generally, unity of operation refers to "staff" functions, such as purchasing,

operated substantially independently of each other with only general supervision from the taxpayer's executive offices. [¶] (3) Strong centralized management: A taxpayer which might otherwise be considered as engaged in more than one trade or business is properly considered as engaged in one trade or business when there is a strong central management, coupled with the existence of centralized departments for such functions as financing, advertising, research, or purchasing[.] Thus, some conglomerates may properly be considered as engaged in only one trade or business when the central executive officers are normally involved in the operations of the various divisions and there are centralized offices which perform for the divisions the normal matters which a truly independent business would perform for itself, such as accounting, personnel, insurance, legal, purchasing, advertising, or financing." (Tit. 18, § 25120, subd. (b)(1)-(3).)

personnel, advertising, accounting, legal services and financing. (*Chase Brass & Copper Co.* v. *Franchise Tax Bd., supra,* 10 Cal.App.3d at pp. 502-503.) Perhaps because Castle purchased Hy-Alloy as a fully formed business, the two companies have maintained largely separate staff functions. Each company maintains separate advertising, accounting, legal, research and development, and personnel departments. The two companies also retained different law firms as their outside legal counsel. Although the companies had some overlapping insurance, there was no significant integration between the day-to-day administrative operations of the two companies. Consequently, Castle has raised a colorable issue that there was no unity of "operation" between the two companies. (See *Tenneco, supra,* 234 Cal.App.3d at pp. 1528-1529; *Anaconda Co.* v. *Franchise Tax Board, supra,* 130 Cal.App.3d at pp. 28-29.) Nevertheless, we need not decide this issue, as Castle and Hy-Alloy are *unquestionably* unitary under the dependency or contribution test.[12]

### 3. The Corporations Are Unitary Under the Dependency or Contribution Test

As a practical matter, the dependency or contribution test overlaps with the three unities test "in many areas and many of the same facts and factors are used in reaching a determination under either test." (*Appeal of A.M. Castle, supra,* 783 P.2d at p. 1290.) Thus, the fact that two of the three unities clearly exist between Hy-Alloy and Castle is evidence they are unitary under the dependency or contribution test.

Perhaps the most important additional factor is that Castle and Hy-Alloy are in the same "line of business." When a corporation invests in a business which is truly "distinct" from its main line of business, the investment serves the primary function of diversifying the corporate business and reducing risks inherent in business cycles. Such a diverse business is less likely to be unitary with its parent. However, when a corporation invests in a subsidiary which is engaged in the same "line of work" as itself, it becomes much more likely that one function of the investment is to make better use of the parent's existing resources. In these circumstances, the two businesses are likely to be unitary. (*Container Corp.* v. *Franchise Tax Bd., supra,* 463 U.S.

---

[12]We also note that the distinction between "unity of use" and "unity of operation" is artificial. As a practical matter, the two "unities" often overlap. They are useful "only to the extent they reflect the organizational and economic interrelation between the parent and subsidiary companies. This interrelation must be significant in order to find a unitary business." (*Dental Consultants, supra,* 1 Cal.App.4th at p. 349, citing *The Unitary Concept, supra,* 12 Hastings L.J. at pp. 50-52.)

at p. 178 [77 L.Ed.2d at p. 561]; see also *Tenneco, supra*, 234 Cal.App.3d at pp. 1531-1532.)

The Board has adopted the foregoing principle in its regulations. Title 18, section 25120, subdivision (b)(1), states that there is a strong presumption the activities of the taxpayer constitute a single trade or business "when all of its activities are in the same general line. For example, a taxpayer which operates a chain of retail grocery stores will almost always be engaged in a single trade or business." Here, Castle and Hy-Alloy's activities are in the same "general line": selling preformed bulk metals to commercial customers. Moreover, Castle purchased Hy-Alloy to make better use of its existing resources; namely its servicing and distribution network. In our view, this is a classic case of a larger parent purchasing a smaller subsidiary to better utilize its existing resources, and to capitalize on the synergy between the two corporations.

Nevertheless, Castle cites several appellate decisions *issued by the State Board of Equalization* as authority that Castle and Hy-Alloy are not in the same "line of business." (See §§ 19045-19048; 2 Cal. Taxes (Cont.Ed.Bar 1993) § 3.131, pp. 90-91.) Those written decisions construe "activities in the same general line" in an extremely narrow manner. In one decision, the Board of Equalization held that a corporation engaged in the production of carbonated soft drinks was not in the same "line of business" as its subsidiary, which processed and marketed noncarbonated citrus beverages. (*In re Appeal of Doric Foods Corporation*, Cal. State Tax Rptr. (CCH) 1991-1992 transfer binder, ¶ 401-866.) In another, the Board of Equalization held a parent corporation and its Mexican subsidiaries—all of which manufactured carpets—were not in the same line of business because there were numerous differences with respect to style, design and content of the carpets manufactured by each corporation. (*In re Appeal of Mohasco Corporation*, Cal. State Tax Rptr. (CCH) 1981-1984 transfer binder, ¶ 400-396.)

■ However, neither of these administrative decisions have precedential value. Administrative tribunals such as the State Board of Equalization do not make precedents that are binding on this court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 763, p. 730.) But even if the cited decisions did have precedential value, we would decline to follow them. ■ ■ In our view, two corporations are engaged in the same "general line" of business when: (1) the two businesses are *similar* (but not necessarily identical); and (2) after the two corporations are combined, it permits the parent corporation to make better use of its existing business related resources. This may be

done through "economies of scale," "operational integration," or "sharing of expertise." (*Container Corp.* v. *Franchise Tax Bd.*, *supra*, 463 U.S. at p. 178 [77 L.Ed.2d at p. 561]; quoted in *Tenneco*, *supra*, 234 Cal.App.3d 1531-1532.) This test is based on the rationale the Supreme Court expressed in *Container Corp.*

Here, there is no question Castle made "better use of its existing business related resources" when it purchased Hy-Alloy. The purchase permitted Castle to use its *existing* distribution system to service a new (though closely related) market. (See also *Appeal of A.M. Castle & Co.*, *supra*, 783 P.2d at p. 1291 [finding that "Castle and Hy-Alloy were in the same general line of business"]; *Standard Register Co.* v. *Franchise Tax Board* (1968) 259 Cal.App.2d 125, 135 [66 Cal.Rptr. 803] [purchase of business to extend business into new geographic area is evidence of unity under dependency or contribution test].)

There are numerous other factors which indicate "the portion of the business done within the state [Castle] is dependent upon or contributes to the operation of the business without the state [Hy-Alloy] . . . ." (*Edison California Stores* v. *McColgan*, *supra*, 30 Cal.2d at p. 481.) First, as a practical matter, during the years at issue, Castle purchased between 31 percent and 48 percent of Hy-Alloy's total distribution and then resold it through its existing distribution system. Consequently, there is no question Castle's business in this state contributed to Hy-Alloy's operation and success. (See *Chase Brass & Copper Co.* v. *Franchise Tax Bd.*, *supra*, 10 Cal.App.3d at p. 505 ["To have a buyer of a substantial portion of . . . production . . . must be assumed to be an advantage."].) Similarly, Castle's operation in this state depended in part on the steady flow of product Hy-Alloy provided. In addition, Castle helped Hy-Alloy with financing by sponsoring an industrial revenue bond for Hy-Alloy's warehouse expansion and by directly loaning Hy-Alloy $1.5 million in 1977. This was strong evidence the businesses were unitary. (See *Dental Consultants*, *supra*, 1 Cal.App.4th at p. 349 ["Substantial intercompany loans . . . are significant evidence of unity of operation."].) Finally, Hy-Alloy made regular business activity reports to Castle.

We conclude that the evidence, taken as a whole, shows Castle and Hy-Alloy were unitary during the tax years at issue (1975 through 1978). The Kansas Supreme Court's decision in *Appeal of A.M. Castle & Co.*, *supra*, 783 P.2d 1286, supports our conclusion. There, the Kansas court relied on many of the same factors we have cited in this case. The Kansas court

applied the dependency or contribution test to conclude that Castle and Hy-Alloy were unitary in tax years 1977 through 1979. (*Id.* at pp. 1287, 1290-1292.) The Kansas court stated that ". . . the overwhelming substantial evidence leads to the conclusion that Castle and Hy-Alloy constitute a unitary business operation." (*Id.* at p. 1292.) The same is true of the evidence in this case, much of which is identical to the evidence in the Kansas case.[13]

In sum, the evidence clearly shows Castle and Hy-Alloy were a unitary business for tax years 1975 through 1978.

C., D.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### III.  DISPOSITION

The judgment is affirmed.

Merrill, Acting P. J., and Corrigan, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 26, 1995.

---

[13]We are not giving the Kansas court's decision precedential effect. Instead, we find the decision persuasive because it is construing very similar facts in the context of a uniform statute (the Division of Income Act). (See 9 Witkin, Cal. Procedure, *supra*, § 778, p. 748.)
    *See footnote, *ante*, page 1794.